## WILKES and others *vs.* HARPER and others.

It is well settled, as a general principle of equity, that where one person, or his property, stands in the situation of a surety for the payment of a debt, for which payment another person, or his property, is primarily liable, the one who is secondarily liable, upon his paying the debt to the original creditor, is entitled to be subrogated to all the rights and remedies of such creditor, as they then exist, against the principal debtor or his property.

And where the original creditor has even an equitable lien upon the property of the person who is primarily liable to him, such lien may be upheld and enforced, in favor of the substituted creditor, in preference to any subsequent lien or claim upon such property ; unless it be a legal lien or title acquired by a bona fide mortgagee, or

Wilkes *v.* Harper.

purchaser, or pledgee, for a valuable consideration, and without notice of the prior equitable right.

In all cases, in respect to mere equitable liens, the maxim prevails, in the court of chancery, that he who is prior in time is stronger in right.

It is also a settled principle in the court of chancery, that the general lien of a judgment, upon the real estate of a debtor, is subject to all the equities which existed against such real estate, in favor of third persons, at the time of the recovery of such judgment. And a court of equity will so control the legal lien, of the judgment creditor, as to protect the rights of those who have prior equitable interests in, or liens on, such property, or the proceeds thereof.

Legatees, whose shares of the personal estate of the testator have been wasted by the executor, have no specific equitable lien therefor upon the real estate to which such executor is entitled as a devisee of the testator, to make good their loss. Nor are such legatees, on that account, entitled to a priority over the legal liens which other creditors of the executor have acquired, upon such real estate, by judgment.

Neither will the receipt, by an executor, for the mere purpose of distribution, of the shares of devisees of the purchase money of real estate sold by him as their agent, give them a lien upon real estate devised to such executor.

THIS was an application, by the defendants, to dissolve an injunction, for want of equity in the bill to sustain it. The claim of the complainants was founded upon the will of Charles Wilkes, of the city of New-York, and on the frauds and misconduct of Horatio Wilkes, one of the executors and trustees, and also one of the residuary legatees and devisees of the testator. C. Wilkes, the testator, died in 1833, possessed of personal estate of the value of about $250,000, and also of a very large real estate; a part of which real estate consisted of the house and lot No. 28 Laight-street in the city of New-York. He left his widow, Jane Wilkes, and six children—George, Hamilton, Horatio, Anne, Charlotte the wife of Lord Jeffrey of Edinburgh, and Frances the wife of C. D. Colden, surviving him; and he appointed his widow executrix, and his three sons executors of his will. By that will he bequeathed to his widow his house and lot No. 28 Laight-street for life, giving her the right to elect between that and another house and lot in the same street; and he also gave to her the use of his furniture, plate, pictures, and carriage and horses, during life. In addition to this, he gave to his executrix and executors $50,000, in trust to invest the same, and to pay over the interest thereof to his widow for life; with power to her to dispose of $30,000 of the capital

thereof, at her death, by will; and the other $20,000 was then to sink into his residuary estate. And, after giving $6000 in legacies to his nephews and niece, he disposed of the residue of his real and personal estate among his six children in equal shares; the sons to take their shares absolutely and directly; and the share of one of the daughters was vested in his executrix and executors to sell the same and pay the proceeds to her or her representatives. The shares of the other two daughters he devised and bequeathed to other persons, as trustees, to sell and convert the same into money, and invest the proceeds in permanent securities for the separate use of those two daughters respectively for life, with power to the daughters to dispose of the same by will; and in default of such disposition, he gave the same to the heirs or assigns of such daughters forever.

The widow and all the sons proved the will of the testator and took out letters testamentary thereon; but they permitted Horatio Wilkes, one of their number, to have the principal control and management of the funds of the estate. Out of the funds which came to his hands, he paid for debts due from and moneys held in trust by the testator, about $130,000; and he set apart and invested $50,000 for the legacy to the widow, in addition to the furniture, &c., specifically bequeathed to her. He also paid the legacies to the nephews and niece of the testator. Portions of the real estate had also been sold, either by the devisees, or by Horatio Wilkes as their agent, to the amount of about $95,000; the proceeds of which sales, with the exception of $26,000 received by his brother Hamilton, came into his hands for the convenience of distribution. And he also received about $30,000, for the interest and income of the personal estate which had come to his hands as one of the executors, and for rents and profits of real estate which the devisees had suffered him to collect and receive, and for interest on the proceeds of real estate in his hands for distribution. Out of these proceeds of the real and personal estate, in December, 1835, Horatio Wilkes distributed between himself and his brother George and the trustees of his three sisters, about $100,000, in equal proportions. And Hamilton Wilkes retained in his hands the

$26,000, on account of his share of his father's real and personal estate; leaving in the hands of Horatio Wilkes between fifty and sixty thousand dollars of the proceeds of the personal estate, and of the real estate which had been sold, as a fund to pay the residue of the debts of the testator, and for future distribution among those who were entitled to the same. This sum, with the exception of $2400, as the complainants alleged in their bill, Horatio Wilkes wasted or appropriated to his own use previous to the recovery of the complainants' judgment against him, in January, 1837. He also wasted, or appropriated to his own use, about $27,000 of the trust fund which he had previously set apart and invested for the legacy to his mother.

In January, 1837, the defendants in this suit recovered a judgment against Horatio Wilkes, and two other persons, in the superior court of the city of New-York, for $2838, for a debt in no way connected with the estate of the testator; which judgment became a lien upon the legal title of Horatio Wilkes in one-sixth of the remainder in fee, of the house and lot No. 28 Laight-street, devised to him by the will of his father. In March, 1840, Horatio Wilkes died unmarried and intestate, leaving his mother, and his two brothers and three sisters, his only heirs at law. All his estate and property of every kind, with the exception of his interest in the Laight-street lot, had previous to that time been applied to the payment of his debts; leaving the judgment of the defendants in this suit, and the debts due from him on account of his father's estate unpaid. At the time of his death there also remained due from the estate of his father to Fanny Garnett and Harriet Garnett a debt of about $12,500, for moneys received in trust by the testator during his lifetime, and invested by him in his own name; which fund came to the hands of the acting executor and was wasted by him previous to the recovery of the judgment of the defendants in this suit. In May, 1840, Hamilton Wilkes applied the $2400 of the proceeds of the estate of his father, which had not been wasted by the acting executor, to the payment of a part of the debt of the Misses Garnett. And being advised that the surviving executors and executrix, and the residuary

legatees and devisees, were liable to pay the balance of that debt, he paid it out of his own funds, upon his and their account, and with their assent.

The defendants in this suit afterwards sued out a scire facias, against one of the surviving judgment debtors, and against the assignee of the other, who had been discharged under the bankrupt act, and against the brothers and sisters and the mother of Horatio Wilkes, as his heirs at law, to revive their judgment and have execution thereon against the estate upon which it was a lien. The complainants, the widow and surviving children of Charles Wilkes, with the husbands and trustees of the daughters, thereupon filed their bill in this cause, stating these facts, and also stating that other claims existed against the estate of Charles Wilkes, the validity of which, however, they did not admit, and claiming the right to have the residuary real estate which was devised to Horatio by the will of his father, applied to pay the balance due to them and the amount which Hamilton Wilkes had paid for them to the Misses Garnett, and any other debts of the testator which they might be compelled to pay. They also prayed for an injunction to restrain the defendants from proceeding upon the scire facias to revive their judgment, and from commencing any other suit or proceeding to enforce the lien of their judgment against the interest which Horatio Wilkes had, under the will of his father, in the house and lot No. 28 Laight-street. And the injunction was issued accordingly, upon the certificate of one of the vice chancellors, acting as an injunction master.

*S. A. Foot,* for defendants. The only questions for the chancellor's decision in this case, are 1. Is there sufficient, on the face of the bill, to authorize the granting of the injunction? 2. If there is, should not the injunction be modified so as to permit the defendants in this suit to proceed to judgment on their scire facias?

The complainants claim, that they have an equitable lien on Horatio Wilkes' undivided sixth part in the house and lot No. 28 Laight-street, superior to the lien of the defendants by vir-

Wilkes *v.* Harper.

tue of their judgment; and they claim to have an injunction against the defendants to restrain them from enforcing their judgment, and especially to stop them from further proceedings on their scire facias issued to revive it. The bill contains no statement that there was not, at the death of the testator, and is not now, in the hands of his legatees, a sufficient amount of his personal property to meet and satisfy all just claims against his estate. Nor could any such statement be made with truth, for the contrary appears on the face of the bill. The bill also contains no statement that after due proceedings before the proper surrogate's court, or at law, any creditor has been unable to collect his debt, or any part of it, from the personal representatives of the decedent, or his next of kin, or legatees.

This cause has already been fully discussed upon pleadings and proofs, and decided by the assistant vice chancellor on the same facts substantially which appear in the present bill. On that occasion the complainant's bill was dismissed with costs, but without prejudice; the assistant vice chancellor suggesting that the time of the devastavit by Horatio Wilkes might have some influence on the question between the parties.

We cannot conceive how the time of Horatio Wilkes' devastavit can have the least influence on the rights of the parties. In opening this motion to dissolve the injunction, we do not consider it necessary to do more than refer to the sections of the statute which apply to the subject, and to a case or two where like matters have been discussed and decided. (2 *R. S.* 2d ed. 369, §§ 32, 33, 34. *Id.* 371, §§ 48 *to* 56. *Id.* 372, §§ 57 *to* 60. *Morris and others* v. *Mowatt*, 2 *Paige*, 586. *Butts* v. *Genung*, 5 *Id.* 204. *Schermerhorn* v. *Barhydt*, 9 *Id.* 28.)

There appearing to be no equity on the face of the bill, we ask to have the injunction dissolved; but if the chancellor shall be of opinion that the bill does contain grounds of equity, then we ask to have the injunction modified so as to allow the defendants to proceed to judgment on their scire facias.

*W. M. Evarts,* for the complainants. Upon the facts stated in the bill, we claim the following equities: *First,* that Horatio Wilkes' interest in the house in Laight-street, derived from his father's estate, should contribute to make good to Hamilton Wilkes one-sixth part of the debt of the estate paid by him. *Second,* that inasmuch as Horatio wasted the fund out of which this debt could and should have been paid, his interest in the house should be applied *in solido* to the payment of this debt, before the complainants should be called upon for contribution. *Third,* that Horatio's interest in the house is liable to the complainants, to make good the entire devastavit committed by him on the estate. *Fourth,* the same equities in respect of the claim in suit against the estate of Charles Wilkes, as in respect to the debt paid by Hamilton Wilkes to the Misses Garnett; and *Fifth,* that these equities are superior to the legal lien of the defendants' judgment.

If this bill had been filed against Horatio Wilkes in his lifetime, and its equities asserted against the Laight-street property in his hands, (no claims of creditors of Horatio intervening,) it is difficult to imagine any answer which it could lie in his mouth to make to the manifest justice of the complainants' claim. It would not be necessary for them to found their rights upon statutory proceedings, nor even to confirm them by the substituted rights which they acquire from having paid the debt of their common testator. They could have rested upon a simple equity, to have the portion of the estate of the testator, which the executor had wasted, treated as his distributive portion of the estate, and all that they could arrest from dissipation applied towards making good the shares of the estate to which they were respectively entitled. It would certainly be no injustice to Horatio, to consider the testator's property which he had converted to his own use, as taken by him as his distributive share under the will, and if his devastavit did not encroach upon the entire estate beyond his own interest in it, he would be relieved from the opprobrium of a breach of trust, and the other parties in interest from any loss from his acts. Suppose, in the case at bar, these complainants, getting information of Horatio's

Wilkes *v.* Harper.

dealings with the estate, and of his pecuniary condition, just at the moment when the funds of the estate had been made way with to the full amount of his proportion of it, and having good grounds (such as a court of equity would acknowledge,) for *fearing* that if he continued in the administration of the estate, its funds would be exhausted for his individual purposes, to the detriment of the other devisees and legatees, had filed a bill to have him removed from his trust, and for a decree determining that he had received his share, and that the complainants were entitled to the remainder of the estate. Could Horatio be heard to allege, that a share of this or that piece of property which remained to the estate was his, notwithstanding his devastavit, that he had disposed not of his own interest in the undivided estate, but of that of his co-devisees and co-legatees pro rata ; that the entire estate must be considered as by so much diminished, and he still be entitled to his proportion of the balance, leaving the other beneficiaries under the will to recover from him their interest in the amount of his devastavit as his simple contract creditors? Certainly not. In respect of honesty, there could be no defence of such claims, and their legal absurdity is just as apparent. They would involve nothing more nor less than the doctrine that cestuis que trust had no property in the trust fund, but were mere creditors of the trustee—a doctrine which is utterly untenable.

Now, if under the circumstances above supposed, there had been judgment creditors of Horatio just ready to subject still more of the testator's estate to the individual purposes of Horatio, (i. e. to the payment of his individual debts,) or in other words, seeking to have their claims against Horatio paid from the shares of his father's property which belonged to his co-devisees and co-legatees ; would they, by force of their judgments, prevail against these complainants, though Horatio himself could not stand for a moment before them ? To maintain the affirmative of this, we respectfully submit, involves the same doctrine which we have just, as it seems to us, disposed of, that the complainants were merely creditors of Horatio for their share of the testator's estate, and had no property in it, but only a

personal claim upon the executors in respect of it, and were indeed upon the same footing with his ordinary individual creditors; and these latter, by obtaining a judgment, had acquired the advantage of a specific lien, and could make way with the testator's property in the hands of Horatio, though Horatio himself, as we have shown above, could not, against the complainants, retain it.

We had supposed the extent of judgment creditors' rights to be well defined, and incontestibly settled in this court; that such rights never could go beyond the judgment debtor's rights at the time of the recovery of the judgment, and never could, directly or indirectly, impair or retard the equities, apparent or latent, of third persons against the judgment debtor existing prior to the recovery of the judgment. This is, in the fullest and most unequivocal manner, affirmed to be the doctrine of this court, in the opinion of the learned assistant vice chancellor in the former suit between these parties, and the authorities cited fully sustain this doctrine.

Upon the former bill, it did not appear whether the devastavit of Horatio was committed before or after the recovery of the defendants' judgment; it now appears that it was complete before the date of the judgment. Our claim then against Horatio and the estate of the testator in his hands at the time of the recovery of the defendants' judgment was fully ripe, and, in the language of the assistant vice chancellor, "its justice is perfectly manifest." We suppose its title to have its justice effectuated in a court of equity is equally manifest.

"The only open point in it," (the complainants' claim,) says the assistant vice chancellor, "is whether such claim is a right enforceable directly against the lands, or whether it is any thing more than a debt for money paid, to which all the debtor's property is liable, but which is not chargeable upon any specific portion of it until judgment or execution." Upon this point the assistant vice chancellor very properly withholds an opinion, as he did not suppose the former bill by its facts properly raised it.

If the house in Laight-street were Horatio's property, derived

Wilkes *v.* Harper.

by purchase with his own moneys, then, and only then, we respectfully submit, would the " open point," " the only open point" really exist and require decision. It is as the testator's property, that we claim an equity, an equitable lien upon it to the disparagement of the defendants' legal lien. The controversy between us, (in this branch of the case,) is just this : a share in this Laight-street property, at law, belongs to your judgment debtor, and you, at law, by your judgment have a lien upon it. The property, however, is a part of the residuary estate of our testator, and your judgment debtor has had and disposed of $50,000 or $60,000 worth more than his share of the testator's residuary estate, and therefore all that we can find remaining belongs in equity to us. Still, the legal title being in Horatio, when you perfected your judgment, we are obliged to come into this court to have our equitable rights enforced, as paramount to your legal lien on property which did not, in equity, belong to your debtor when you recovered your judgment.

It is submitted that the whole point is, not whether this claim of ours would give us a lien upon specific portions of Horatio's property, but whether we were not, upon the facts of this bill, the equitable owners of the property in question when the defendants' judgment was recovered. Suppose we could trace $5000 of the personal funds of the estate included in the de-. vastavit, into a specific investment in real estate, would this judgment lien triumph over our right to follow the trust money ? But here we find the very property which the testator owned in his lifetime. Cannot we, then, retain it from these defendants ? If not, then these defendants are but continuing the devastavit in the name of Horatio. No amplitude of illustration or authority would assist the view of the case which we have thus presented, and it seems to us very clear, that for the whole amount of the devastavit, the complainants have an equitable lien upon all of the testator's property which they can find in Horatio's hands, prior to the legal lien of defendants' judgment, and the injunction should be sustained on this ground.

But the complainants are also able to present to the court the question, whether a creditor of Charles Wilkes, the testator,

has not an equitable lien upon his estate devised to Horatio,
better than an individual creditor of Horatio has, or can obtain
by judgment? It is clear, that when one of several sureties
pays the debt of his principal, he is subrogated to all the rights
of the creditor against the principal and the other sureties.
(I *Story's Eq.* § 449. *Cuyler* v. *Ensworth,* 6 *Paige,* 32.
*Eddy* v. *Traver, Idem,* 521. *Schermerhorn* v. *Barhydt,* 9
*Idem,* 28.)

That Hamilton Wilkes, in paying the debt of his testator to
the Misses Garnett, was subrogated to all the rights which
they had against the estate of Charles Wilkes and his legatees,
cannot be disputed, and will probably be conceded. Who were
the persons, then, who would have been liable to these cred-
itors of Charles Wilkes, upon their failure to collect their debt
from the executors? Manifestly the residuary legatees; and
the same persons are also residuary devisees. How far are
they liable as legatees? To the value of any assets of the tes-
tator which they may have received. (2 *R. S.* 368, § 26, 2*d
ed.*) Are they severally liable in solido, or only proportionably?
Only the latter; and the payment by a legatee of his propor-
tion of the debt discharges him. (2 *R. S.* 369, §§ 28, 30, 31.)
The Misses Garnett, then—it appearing that Horatio had re-
ceived assets to a sufficient amount—would have recovered a
judgment against him for his contributory share as residuary
legatee; and of course could have collected no more than their
rateable shares from the other legatees. If, then, they had
failed to get from Horatio the amount for which they had
judgment against him, they must go unpaid, or look elsewhere
for their money. We will follow them a step further. The
whole of the testator's estate having been disposed of by will,
there are no heirs liable in respect of estate descended. The
residuary devisees, therefore, must make up the deficiency not
collected from the legatees. Horatio, with the others, who are
residuary legatees, are also residuary devisees, and for his pro-
portionate share the Misses Garnett will have judgment against
him. (2 *R. S.* 371, §§ 52, 53. *Idem,* 372, § 60.) And this
judgment will be a better lien at law, too, upon the estate

devised to Horatio, than any judgment against him personally. (2 *R. S.* 371, § 48. *Idem*, 372, § 60.) It would seem, then, that the assistant vice chancellor was in error in assuming that the Misses Garnett could have collected their money from the legatees. Horatio's share they would have got from no one but himself; and he having made way with all the assets which he had received, and being insolvent, would have escaped as legatee, only, however, to be brought in as devisee. In other words, the interest of Horatio in the Laight-street house, which we are now seeking to appropriate to making good to Hamilton Wilkes Horatio's contributory share of the debt paid by Hamilton, would have been subjected to such payment by the Misses Garnett, and this judgment of the defendants, though prior in time, would have been at law, postponed in lien to the judgment of the Misses Garnett.

We have supposed that the creditor of Charles Wilkes, the testator, would have been driven to two suits before he would recover that portion of his claim which Horatio, in respect of the testator's property, devised and bequeathed to him, was liable to pay; it seems to us, however, that in a case where the persons liable as legatees and as devisees are the same, the necessity of an observance of the statutory order of proceedings would be superseded by the particular circumstances of the case, and the remedy be afforded to the creditor in one suit. The whole design of these statutory provisions seems to have been for the protection of the parties respectively standing behind others in the line of liability. But when the same parties are liable in either relation, the pursuit of them through the various relations in separate suits, seems entirely useless, and the statute becomes inapplicable.

But again; those provisions of the statute are in their terms applicable only to suits actually inter partes, between the creditor and those who have succeeded to the debtor's property, and as they are given for the protection of the defendants in such suits, the benefit thereof can be waived by them. It is idle to contend that a devisee, aware that suits against the prior parties will result in nothing but accumulated costs,

which it will finally rest with him to discharge, is compelled by statute to insist upon the creditor's proceeding through all those parties. Thus, in the case at bar, Hamilton Wilkes knew that the claim of the Misses Garnett was a good one against the estate; that a suit against the executors would produce only $2400; that for the deficiency the legatees would be rateably liable, and any still remaining deficiency would fall upon the devisees. All the legatees and devisees living, assent to the payment, and there remains of Horatio's share as devisee, enough to contribute his proportion. Hamilton, therefore, promptly pays the whole debt, and charges the shares of the contributors thereto with their rateable proportions. By the death of Horatio, intestate, without issue and unmarried the mother, brothers and sisters have succeeded to his property, subject to this claim of Hamilton; and the matter could have been amicably settled among them, but for the impending judgment of these defendants and their recent proceedings in scire facias. The remarks of his honor the chancellor in the recent case of *Schermerhorn* v. *Barhydt*, (9 *Paige*, 47,) on the point of the necessity of a strict observance of the statutory rules, seem entirely appropriate to the case at bar; and the technical objections which in the face of *the perfectly manifest justice of our claim*, are set up by the defendants, are entirely met by the very sensible discrimination taken in the case cited.

We submit that the justice and equity of our claim upon Horatio's interest in the Laight-street property for his contributory share of the testator's debt paid by Hamilton Wilkes, is abundantly clear; that the power and duty of this court to enforce such justice and equity are equally clear; and that the injunction was properly granted, and should be continued on this ground. The other equities set up in the bill, and stated in the points submitted, will all fall within one or the other of the two heads of the foregoing discussion.

We have already supposed that a great point was gained in a court of equity, when the justice of a claim was acknowledged by the court to be perfectly manifest. Such is our case, as shown by our present bill, in the opinion of the assistant vice

chancellor. Such, we doubt not, will it appear to the chancellor. If some inexorable rule of law exists to withstand the enforcement of such perfectly manifest justice, at law, we appeal to the origin, history and principles of this court, as of a tribunal existing, more than for any other purpose, to uphold manifest justice against the manifest injustice to which the very inflexibility of rules of law sometimes necessarily tends.

Do we then contend that the defendants are without rights? By no means. The effect of their judgment upon the devised lands, as against our prior equities against them, is this, that as our equities are good against both the testator's *personal property* and his real property in the hands of Horatio, and as the defendants' lien reaches only his real property, the defendants would have a right to require us to proceed against the testator's personal property to the exoneration of the real estate upon which their lien rested. This principle, to be sure, is of no avail in the case at bar; but only for a reason which strikingly confirms and illustrates our equities against the real property, to wit, that all the personalty of the testator included in Horatio's share of his father's estate, and in the amount wasted, had, before the claim of the Misses Garnett was paid, and before the devastavit was discovered, been devoted to the claims of those standing in the same right as these defendants, to wit, the personal creditors of Horatio.

The usual reasons even of injury or delay, from an injunction, to defendants, which will prove to have been unjust, if the cause, on the hearing, is decided in their favor, possess no force in this case. The court will observe that the life estate of Mrs. Janet Wilkes, the widow of Charles Wilkes, still continues, and the value of the reversion, on which alone the defendants' lien rests, is constantly increasing. The security of the bond, too, is entirely satisfactory to the defendants, and is ample in amount for their protection. The complainants, on the other hand, will be but poorly indemnified by a final decision in their favor, if the homestead shall have been sold under a judgment which was no equitable lien upon it.

Wilkes v. Harper.

*S. A. Foot*, in reply. Horatio Wilkes, on the death of his father Charles Wilkes, became the absolute and sole owner of an undivided sixth part of the house and lot in Laight-street, subject to the life estate of his mother ; or in other words, he was the sole and absolute owner of a vested remainder in an undivided sixth part of that house and lot.

This undivided sixth part was his separate property which he owned and held as a tenant in common with his co-devisees. This vested remainder in an undivided sixth part of that house and lot was held and owned by him in the same manner as any other piece of real estate which he might have acquired by purchase, and subject to the same and no other liabilities, liens or equities. The fact that he acquired title to it by virtue of a devise from his father, made it not the less his own absolute property than it would have been, had he obtained his title from a stranger ; nor did that fact give his creditors any claim to or lien in law or equity upon it, which they would not have had if his title had come from a stranger. The creditors, however, of his father, have, under certain circumstances, an equitable lien upon it ; but that lien is given by the statute only. A creditor of Charles Wilkes, the father, has no right or lien on this property, by the common law, which a creditor of Horatio Wilkes has not. And no case can be found to show that he has. The statute alone gives the creditor of Charles Wilkes his lien. And under what circumstances does the statute give it to him ? The sections referred to in the opening argument give the answer.

There being, as appears on the face of the bill, sufficient personal property left by Charles Wilkes to pay all his debts, and there being still uninvested in the hands of his legatees sufficient personal property to pay all debts and claims against his estate which have been or may be presented ; and no proceedings having been taken by any creditor or any person standing in the place of a creditor, before the proper surrogate's court, or at law, against the personal representatives or next of kin or the legatees of Charles Wilkes, the defendants submit that the com-

plainants have no ground on which to place their claim to the interposition of this court.

There is no doubt that the complainants, as argued by their counsel, have great and serious cause of complaint against Horatio Wilkes, and a legal and most just claim against him and his estate, for a large sum of money ; and that they had such claim when the defendants recovered their judgment; and if they had prosecuted such claim at law or in equity, they would have obtained a judgment or decree for the amount; which when obtained, would have been a lien on the property in question. But the law gives them no such lien until their judgment is recovered or decree obtained.

Hamilton Wilkes, standing in the place of the Garnetts, is bound by the statute to seek and take the satisfaction of his demand out of the personal estate of Charles Wilkes : and those legatees who pay him may call on their co-legatees to contribute their just proportion. But the legatees, who by paying, acquire a claim against their co-legatees for a contributive share, only acquire against them a lawful and just demand, the same precisely which one surety, who pays the whole debt, acquires against his co-sureties ; but they do not obtain a specific lien in law or equity on any property, real or personal, of their co-legatees or co-sureties. No case countenances such an idea. Before they can apply the property, real or personal, of their co-legatees or co-sureties, to the satisfaction of their demand, they must acquire a lien by judgment or decree, and if other judgments precede them they cannot ask a court to disregard them. These propositions are all so obvious that illustration seems unnecessary, and the true source of the error on the other side appears to consist in confounding the relations in which the complainants stand to each other and to Horatio Wilkes.

THE CHANCELLOR. Some of the principles of equity upon which the complainants found their claim to relief in this case have been so often examined and enforced in this court, that it is not necessary to do more than merely to state them at this time. It is perfectly well settled, as a general principle of equity,

that where one person, or his property, stands in the situation of a surety for the payment of a debt, for which payment another person, or his property, is primarily liable, the one who is secondarily liable, upon payment of the debt to the original creditor, is entitled to be subrogated to all their rights and remedies of the creditor, as they then exist, against the principal debtor or his property. And where the original creditor has even an equitable lien upon the property of the person primarily liable to him, such lien may be upheld and enforced in favor of the substituted creditor, in preference to any subsequent lien or claim upon such property, unless it be a legal lien, or title acquired by a bona fide mortgagee, or purchaser, or pledgee, for a valuable consideration and without notice of the prior equitable right. And in all cases, in respect to mere equitable liens, the maxim prevails here, that he who is prior in time is stronger in right. It is also a settled principle in this court, that the general lien of a judgment upon the real estate of a debtor is subject to all the equities which existed against such real estate in favor of third persons, at the time of the recovery of such judgment. And a court of equity will control the legal lien of the judgment creditor so as to protect the rights of those who have prior equitable interests in, or liens on such property, or the proceeds thereof. In the recent case of *Buchan* v. *Sumner, ante, p.* 165,) I had occasion to apply this principle to the case of an equitable lien of a partner, upon real estate received by the firm in payment of a partnership debt, and where the legal title to the land was taken in the name of both the copartners. And it was there held, that the general lien of a judgment, recovered against one of the copartners for his individual debt, was subordinate to the equitable right of his copartners to have the whole proceeds of the land appropriated to pay the debts of the firm, and to equalize the claims of the copartners upon such proceeds, as partnership funds. It remains to be seen whether either of these equitable principles, or all of them combined, are sufficient to support the claim of the complainants, in the present case, to an equitable priority over the legal

lien of the judgment of the defendants upon the real estate of Horatio Wilkes, devised to him by his father.

In examining this question it must be borne in mind, that the executors, as such, were not authorized to sell any portion of the residuary real estate of the testator for the purpose of distribution. And the only part of the real estate which they had any control over as executors, was the share of Mrs. Jeffrey; which was devised to the executrix and executors, as trustees, to sell the same and pay over the proceeds to her. The testator had therefore made a perfect discrimination between his real and personal estate, instead of placing the proceeds of the whole in the hands of his executors for distribution. Notwithstanding this, and although Horatio Wilkes's share of the real estate was devised to him directly and absolutely, the complainants contend that as he has wasted some part of their several shares of the personal estate, which has come to his hands as one of the executors, they have an equitable lien therefor upon the real estate to which he was entitled as a devisee of his father, to make good their loss; and that this lien is entitled to a priority over the legal lien which some of his other creditors have acquired, on such real estate, by their judgment. This is a new principle, which I think has never been recognized as existing, by this court or by any other court of equity. It is true, he derives his authority as executor under the will of his father, as well as the title to the real estate which is devised to him absolutely for his own use; but that does not appear to be an equitable hypothecation of his interest in the real estate as devisee, as a security for the faithful performance of his trust as executor. Indeed, if such an equitable principle exists, it would be unsafe for any one to deal with a devisee in relation to the estate devised, where such devisee was also an executor, without first inquiring and ascertaining that he had duly administered all the personal estate which had come to his hands as executor. For notice of the existence of the will under which the title to the real estate was derived, would be notice to a purchaser or mortgagee of such real estate, as well as to judgment creditors of the devisee, of this equitable hypothe-

cation of his real estate as security for the discharge of his duties as executor. The equitable lien, if any exists in such a case, would not arise from the fact of his wasting the personal estate, which came to his hands as executor, but from his neglecting to distribute it among the creditors and legatees as soon as practicable after the death of the testator. And the legatees would have the right to file a bill, to enforce their equitable lien upon the real estate of the devisee, the moment he neglected to pay over any of the proceeds of the personal estate to which they were entitled. I am satisfied, however, that no such lien existed in favor of the complainants, on account of their shares of the personal estate which the acting executor received and appropriated to his own use.

They have even less claim to an equitable lien on account of their shares of the real estate, which they had authorized him to receive for them for the purposes of distribution. Whether the devisees themselves sold their several undivided portions of the lands, which they held with him as tenants in common, and allowed him to receive the whole purchase money, or whether they empowered him to sell and convey, as their attorney, does not appear. But in either case, the receipt by him of their several shares of the purchase money for the mere purpose of distribution, as their agent, would not give them a lien upon other real estate devised to him. Nor would his appropriating the whole proceeds of such sale to his own use give them such a lien. For, it would be but an ordinary debt, recoverable against him in his private capacity, and not in his character of executor or devisee. If any equity exists, therefore, in this case, in favor of the complainants, or any of them, which entitles them to a preference over the legal lien of the judgment of the defendants, it must arise out of the payment of the debt due from the estate of the testator to the Misses Garnett. That question I will now proceed to consider.

Had the Misses Garnett, and the other creditors of the estate of C. Wilkes, if there were any others, a legal or an equitable lien upon the real estate of Horatio Wilkes as the devisee of his father, at the time of the recovery of the judgment of these de-

Wilkes *v.* Harper.

fendants, which those creditors could have enforced, to the exclusion of or in preference to the claims of the proper creditors of Horatio Wilkes for his own debt? As the law then stood, the surrogate could not order the sale of real estate, for the payment of the debts of the decedent, after the expiration of three years from the time of granting letters testamentary or of administration, even upon the application of the creditors, and where the personal estate of the decedent was insufficient to pay his debts. (2 *R. S.* 100, § 1. *Idem*, 108, § 48.) The only way, therefore, in which the Misses Garnett, or any other creditors of the decedent, could have reached the real estate in the hands of the devisees, or of any of them, was by a suit in equity, under the provisions of the revised statutes relative to proceedings against heirs and devisees. (2 *R. S.* 450.) There was no estate, real or personal, in this case, which was not disposed of by the will of the testator. The provisions of the statute relative to proceedings against the next of kin, and against heirs, may therefore be laid out of view here. But, to have entitled the creditors to sustain a suit to reach the real estate of the testator, in the hands of his devisees, in January, 1837, it would have been necessary for such creditors to state in their bill, that the personal estate of C. Wilkes which came to the hands of his executrix and executors, or of any of them, was not sufficient to pay his debts; or that, after due proceedings before the proper surrogate and at law, the creditors were not able to collect such debts from the personal representatives of the testator, nor from his legatees to whom a part of his personal estate had been paid on account of their legacies. (2 *R. S.* 452, § 33. *Idem*, 456, § 60.) Or, at least, the creditors would have been required to show a state of facts which would render any proceedings, by them, against the executrix and executors, or against the legatees, wholly unavailing for the recovery of the debt, or the particular part of it claimed by the bill.

I have examined the bill in this cause with great care, and have not been able to find any averment, or statement of facts. which clearly and conclusively shows that the Misses Garnett, at the time of the docketing of the judgment of these defen-

dants, and for some time afterwards, could not have recovered their debt by a proceeding before the surrogate, against the executrix and executors, to compel them to render an account of the personal estate of the testator, and to pay such debt out of such estate. Although it is stated in the bill that Horatio Wilkes had become insolvent about the latter part of 1836 or the beginning of 1837, it is not alleged that he was then entirely destitute of property, so that if he had been cited before the surrogate and ordered to pay the debt of the Misses Garnett, at the time of the recovery of the judgment of these defendants, nothing could have been obtained from property then in his hands; although such property may have been wholly insufficient to pay all of his debts.

I do not think, however, that the rights of these parties depend upon the question whether Horatio Wilkes had or had not wasted the assets in his hands, as the acting executor, previous to the recovery of the judgment of these defendants, or upon the question whether he was or was not then in a situation in which, by a proper proceeding against him, he might have been compelled to pay this debt to the Misses Garnett. But the right of subrogation depends upon the question whether, at the time their debt was paid by Hamilton Wilkes, in behalf of himself and the other complainants, the Misses Garnett could have filed a bill against the complainants, to restrain them from reviving their judgment, and to have the real estate of Horatio Wilkes, upon which it was a lien, applied to the payment of that part of the debt of the testator which these complainants, as legatees or devisees, were legally or equitably bound to pay.

Before the real property devised to either of the devisees could be reached by any of the creditors of the estate of Charles Wilkes, so as to subject the share of such devisee to his or her proportion of the debt, according to the new provisions on this subject contained in the revised statutes, it would be necessary for such creditors to show that they had exhausted their remedy at law against the several legatees, to whom the personal estate had been delivered in payment of their legacies. And here the case made by the complainants wholly fails to show

that the Misses Garnett, at the time of the payment of their debt by Hamilton Wilkes, in May, 1840, had any lien, either at law or in equity, upon the real estate devised to Horatio Wilkes, for that part of their debt which any of these complainants were bound to pay, either as legatees or devisees of Charles Wilkes. For the statute only makes the devisees and legatees liable for their proportionate parts of the debts of the testator, according to the legacies which they have received, and the real estate devised to them ; although the other legatees and devisees are insolvent and wholly unable to pay any thing.   (2 *R. S.* 452, §§ 28, 31.  *Idem*, 455, §§ 52, 53, 61.)   The creditors, therefore, could not, in any form of proceeding, have reached the real estate devised to Horatio Wilkes, so as to overreach the lien of the prior judgment, so as to make it liable for the part of the debt of the testator for which the complainants were liable as legatees or devisees ; but only for the proportionate part of Horatio Wilkes as a devisee, for which proportionate part of the debt neither the complainants nor their property was holden.   All that was necessary for these complainants to do, therefore, to release themselves and their property from further liability, was to pay their proportionate parts of the debt, according to the provisions of the revised statutes on the subject.   And having voluntarily paid that part of the debt for which they did not stand in the situation of sureties for Horatio Wilkes, they were not subrogated to the rights and remedies which the creditors previously had as against the lien of the judgment.   They probably might have secured to themselves that remedy by taking an assignment of that part of the debt, instead of paying the demand of the Misses Garnett in full.   But having neglected to do so, they have no lien upon the real estate in question, which is entitled to a priority, either at law or in equity, over the lien of the judgment of these defendants.

The injunction was therefore improperly granted in this case ; and it must be dissolved, with costs to be taxed.