HENRY J. LEWIS v. AARON F. PALMER and J. L. KING.

It is a well settled principle that a surety who pays a debt for his principal is entitled to be put in the place of the creditor, and to all the means which the creditor possessed to enforce payment against the principal debtor.

H. loaned to the firm of L. & Co. the sum of $1300, taking as security therefor a mortgage on personal property in their possession, and also an assignment of the plaintiff's bond and mortgage covering real estate owned by him; which bond and mortgage, at the request of L. & Co. and for their benefit, had been executed to them, by the plaintiff, for the purpose of being assigned to H.; and which were, at the time the loan was made, and as a condition thereof on the part of H., assigned and delivered by L. & Co. to H. as additional security. Subsequently H. brought a suit to foreclose the mortgage on the plaintiff's property, which was prosecuted, by his administratrix, after his death, to final judgment. To prevent a sale of the mortgaged premises, the plaintiff paid the amount of the judgment, $1780.05, taking from the administratrix of H. an assignment of the chattel mortgage. The defendants, after the chattel mortgage had been duly

filed, and with notice thereof, converted the property embraced in it to their own use, and refused, on demand, to deliver it to the plaintiff.

*Held,* 1. That the case was that of a surety compelled to pay the debt of his principal; and who was entitled to be subrogated to the rights of the creditor against the principal debtors.

2. That the right of H. to the property covered by the chattel mortgage was that of owner, as between the parties to the mortgage and all parties purchasing with notice. That upon a failure to pay, according to the condition of the mortgage, the absolute title, at law, was in the mortgagee, who had the right to possess himself of the goods, sell the same, and pay the debt out of the proceeds.

3. That the plaintiff, being subrogated to this right, upon receiving the assignment of the chattel mortgage, was entitled to enforce it for his reimbursement.

4. That the plaintiff, on paying the debt as surety, and on becoming assignee of the mortgage, became invested with the title to the property and all the rights of H. under the mortgage; and that the defendants were liable to him for the amount he had so paid as surety; the value of the property converted exceeding the amount so paid by the plaintiff.

Purchasers of mortgaged chattels with actual knowledge of the existence of the mortgage are not *bona fide* purchasers, and therefore can not raise the objection that the mortgage had ceased, by its own limitation, to be a lien, and had not been legally renewed.

APPEAL from a judgment of the Supreme Court. The action was to recover, as damages, the value of certain property, (converted by the defendants,) embraced in a chattel mortgage given by the firm of W. & W. H. Lewis to one Amos Haynes, to secure a debt of $1300, for which debt the plaintiff had become the surety of such firm, and had been compelled by legal proceedings to pay.

The cause was referred to S. P. Nash, Esq. as referee, who found the following facts: On the 28th of May, 1851, one Haynes loaned to the firm of W. & W. H. Lewis, manufacturers of daguerreotype apparatus in the city of New York, the sum of $1300, and as security therefor the firm executed and delivered to Haynes a mortgage upon certain goods and chattels in their store and factory, payable on demand, with interest at seven per cent per annum; which chattel mortgage was duly filed, and on the 29th of May, 1852, a true copy thereof, with a statement of the interest of the mort-

gagee in the property therein claimed by him, was also duly filed. About the same time the said mortgage was given, the plaintiff, H. J. Lewis, and his wife, at the request of said firm, and for the benefit of the firm, executed to them their bond and mortgage, for the payment of the sum of $1300 on the 1st of June, 1852, upon certain real estate, situated in Kings county, belonging to the plaintiff, for the purpose of being assigned by said firm to Haynes, as further security for the loan; and the said bond and mortgage were, at the time said loan was made, and as a condition thereof on the part of Haynes, assigned and delivered by the said firm to Haynes as such further security. The bond and mortgage were not given in consideration of any indebtedness from the plaintiff to the firm, but were distinct and apart from their mutual dealings.

About the 1st of July, 1852, Haynes commenced a suit to foreclose the mortgage against the plaintiff, which was continued after his death, in the name of his widow as his administratrix, to final judgment for the sale of the premises; to prevent which the plaintiff paid, on or about the 8th of June, 1854, to the administratrix, the sum of $1780.05, the amount due on the mortgage, with interest and the costs of the action; and the said administratrix, in writing, assigned and transferred to the plaintiff the said chattel mortgage, and all the right, title and interest of the said Haynes or the said administratrix therein. The chattel mortgage contained the usual power of sale in case of default of payment.

The firm of W. & W. H. Lewis have not paid to Haynes or his representatives, or to the plaintiff, any part of the said sum of $1300. The defendants, after the chattel mortgage was duly filed, and with notice of such mortgage, took possession of the goods and chattels mentioned in the plaintiff's complaint, being a portion of those embraced in the said mortgage, and converted the same to their own use; and the

same was of a value exceeding the sum so paid by the plaintiff to the said administratrix. The plaintiff, after the assignment to him of the chattel mortgage, duly demanded of the defendants the possession of the goods and chattels, but they refused to deliver the same or any part thereof.

The principal defense attempted to be maintained was, that the mortgage on the plaintiff's real estate was given to W. & W. H. Lewis to secure the payment of his indebtedness to them, and therefore he was not a surety, and not entitled to be subrogated to the rights of Haynes as a creditor of W. & W. H. Lewis. The referee decided as matter of law, that the plaintiff, as surety for W. & W. H. Lewis in the loan made to them by Amos Haynes, became entitled, upon paying the amount due to the administratrix as aforesaid, to be subrogated to the rights of said Amos Haynes to the chattel mortgage, and upon receiving the assignment thereof, as aforesaid, was entitled to enforce the same for his reimbursement. That the defendants having converted the property embraced in the chattel mortgage to their own use, are liable to the plaintiff for the amount so paid by him, with interest; and that the plaintiff is accordingly entitled to judgment against the defendant for the sum of $2111.63. To which conclusions of law the defendants excepted.

On the trial, after the plaintiff rested, the defendants' counsel moved to dismiss the complaint, on the ground that the defendants appear to be *bona fide* purchasers of the property, and the mortgage has ceased by its own limitation to be a lien, and has not been renewed. The mortgage is dated the 28th of May, 1851, and was renewed the 27th of May, 1852; and also that that renewal was not made thirty days before the expiration of the first year. The motion was denied, and the defendants excepted.

There were several exceptions taken by the defendants' counsel to the reception and exclusion of evidence, all of which were of an immaterial and frivolous character.

The judgment entered on the report of the referee was

affirmed at a general term of the Supreme Court; and the defendants appealed to this court.

*A. Mann, jun.* for the plaintiff.

*R. Goodman,* for the defendants.

Wright, J. On the facts found by the referee, (and we are to consider the case upon such finding,) the judgment is right. Haynes loaned to the firm of W. & W. H. Lewis the sum of $1300, taking as security therefor a chattel mortgage on personal property in their store and factory; and also the plaintiff's bond and mortgage covering real estate owned by him; which bond and mortgage, at the request of W. & W. H. Lewis and for their benefit, had been executed to them by the plaintiff, for the purpose of being assigned to Haynes; and which were, at the time the loan was made, and as a condition thereof on the part of Haynes, assigned and delivered by W. & W. H. Lewis to Haynes as additional security. The relation of the plaintiff to the transaction was that of a mere surety for the firm of W. & W. H. Lewis. Subsequently, Haynes brought a suit to foreclose the mortgage on the plaintiff's property, which was prosecuted by his administratrix, after his death, to final judgment for the sale of the mortgaged premises; and to prevent a sale the plaintiff paid the amount due on the mortgage, with interest and the costs of the action, being the sum of $1780.05; taking from the administratrix an assignment to him of the chattel mortgage, and all the right, title and interest of Haynes, or his administratrix, therein. The case, therefore, was that of a surety compelled to pay the debt of his principal; and who was entitled to be subrogated to the rights of the creditor against the principal debtor. It is a well settled principle, that a surety who pays a debt for his principal is entitled to be put in the place of the creditor, and to all the means which the creditor possessed to enforce payment against the

principal debtor. (*Clason* v. *Morris*, 10 John. 524; *Wilkes* v. *Harper*, 2 Barb. Ch. Rep. 338; *Mathews* v. *Aikin*, 1 Comst. 595; *Hodgson* v. *Shaw*, 3 Myl. & K. 183.) In *Hayes* v. *Ward*, (4 John. Ch. 130,) Chancellor KENT said: "The doctrine does not belong merely to the civil law system. It is equally a well settled principle in the English chancery, that a surety will be entitled to every remedy which the creditor has against the principal debtor, to enforce every security, and to stand in the place of the creditor, and have his securities transferred to him and to avail himself of those securities against the debtor." The mortgage on the debtors' personal property, in this case, was one of the securities and a means possessed by the creditor to enforce payment against the principal; and the plaintiff, a surety, having paid the debt, he was entitled to the security, and to stand in the place of Haynes in respect thereto, and with all the rights of the latter under it. The right of Haynes to the property covered by it was that of owner, as between the parties to the mortgage, and all parties purchasing with notice. It transferred the whole title of the mortgagors to the property, subject to be defeated only by payment, and upon a failure to pay according to its terms, the absolute title, at law, vested in the mortgagee. Haynes had the right, on default of payment, to possess himself of the goods and chattels, sell the same, and pay the debt out of the proceeds. The plaintiff being subrogated to this right, upon receiving the assignment of the mortgage, was entitled to enforce it for his reimbursement. The defendants, however, after the mortgage had been duly filed, and with notice thereof, converted the property embraced in it to their own use; and, after the assignment, refused on demand of the plaintiff to deliver any part thereof to him. The value of the property thus converted exceeded the sum paid by the plaintiff as surety. Under these circumstances, the defendants were liable to the plaintiff for the amount so paid. As against Haynes, the mortgagee, the defendants were simply trespassers, having no

right whatever to the property at the time of the conversion, or afterwards; and this was the precise relation they sustained to the plaintiff, after paying the debt which the mortgage was given to secure. There can be no doubt of Haynes' right before the payment of the debt and the assignment, to have recovered from the defendants the value of the chattels converted, they being neither creditors of the mortgagees, nor subsequent purchasers in good faith. The plaintiff, on paying the debt, and as assignee of the mortgage, became invested with the title to the property, and all the rights of Haynes under the mortgage.

It was not error to refuse a nonsuit. The ground was, that the defendants appeared to be *bona fide* purchasers of the property, and the mortgage had ceased by its own limitation to be a lien, and had not been legally renewed. The statute provides that every chattel mortgage, (when the things mortgaged continue in the possession of the mortgagor,) shall be absolutely void as against the creditors of the mortgagee and subsequent purchasers in good faith, unless the mortgage, or a true copy thereof, shall be filed, (in this case,) in the office of the register of the city of New York; and being thus filed, shall cease to be valid as against the same class of persons, after the expiration of one year from the time of filing; unless within thirty days next preceding the expiration of the said term of one year, a true copy of such mortgage, together with a statement exhibiting the interest of the mortgagee in the property thereby claimed of him by virtue thereof, shall be again filed. (*Laws of* 1833, *chap.* 279.) The mortgage in this case was duly filed on the 7th of June, 1851, and the copy and statement required by the statute again filed on the 27th of May, 1852. In March, 1852, the firm of W. & W. H. Lewis made an assignment of their property for the benefit of creditors, and in that year, with full notice of the mortgage, the defendants purchased from the assignees of the firm, a portion of the property embraced in it. When, therefore, the purchase was made, the mort-

gage was valid as against a purchaser in good faith. But the defendants were not *bona fide* purchasers, having bought and possessed themselves of the property with actual knowledge of the existence of Haynes' mortgage. They could not raise the question of the effect upon the mortgagee's rights of the omission to file or re-file the mortgage.

· An examination of the few exceptions of the defendants' counsel on the trial, has led to the conclusion that none of them are tenable. Those insisted on now will be briefly noticed.

1st. On the examination of one of the firm of W. & W. H. Lewis, the witness was asked: "What was the state of the accounts between the plaintiff and your firm at the time of the giving of the mortgage?" The answer was: "He was indebted to us about $160; I ascertain this from our books." The defendants then objected to the evidence without a production of the books. There was no force in the objection. It was not necessary to produce the books of the firm to qualify the witness to answer the interrogatory.

2d. The counsel of the plaintiff offered in evidence a copy of the judgment in the suit foreclosing the mortgage on the plaintiff's property; to the introduction of which the defendants' counsel objected as being between other parties, as irrelevant and immaterial. The exception was manifestly frivolous. Instead of being irrelevant and immaterial, the evidence was a most important link in the chain to establish the plaintiff's case.

3d. One Doctor Oatman acted as the agent of Haynes in effecting the loan of $1300 to the Lewises. He testified that the plaintiff's premises were mortgaged as a security for the money, and a chattel mortgage taken also, on stock and fixtures. This question was then put to him by the defendants' counsel: "Which property was taken by you as the principal security for the loan?" It was objected to by the plaintiff's counsel as immaterial, and as swearing to an inference; which objection was sustained by the referee. This

was not error. · It was of no sort of importance whether in the witness' view, the plaintiff's bond and mortgage, or the chattel mortgage were taken as the principal security for the loan. Both were required and given.

4th. Oatman testified to a conversation between the plaintiff and himself, at a time when visiting the mortgaged premises. He was asked: "Do you recollect whether or not, at the interview you have spoken of between you and the plaintiff at Greenpoint, any thing was said by him on the subject of the money of the firm having gone in his building there?" The question was objected to as leading, and the objection sustained. It was leading; but if not objectionable on that ground, the inquiry was wholly immaterial. The same answer is applicable to the following question to which an objection was sustained, viz: "Did Lewis, (the plaintiff,) in that conversation, say any thing as to his using the money of the firm?"

The referee having drawn the correct legal conclusions from the facts, and there being no erroneous rulings on the trial to the prejudice or injury of the defendants, the judgment should be affirmed.

All the Judges concurring,

Judgment affirmed.