(33 Misc. Rep. 254.)

### KIRBY v. BARLOW.

(Supreme Court, Special Term, New York County.   December, 1900.)

PRINCIPAL AND SURETY—RIGHTS OF SURETY—CO-SURETIES.

A surety for the payment of a debt, who seeks to compel his co-surety, who had taken up the note and kept it alive, to surrender collaterals which have been placed in the creditor's hands by the principal debtor, must allege and show that he has offered to pay his proper share of the debt, before he can obtain any relief.

Action by David D. Kirby against Florence R. Barlow to compel the assignment of certain shares of corporate stock.   Complaint dismissed.

Arthur J. Martin, for plaintiff.
Joseph Kling, for defendant.

LAWRENCE, J.   I am of the opinion that the evidence in this case establishes that the firm of Kirby & Burckett desired to borrow $3,000, and requested William H. Aymar, the assignor of the plaintiff, and Edward M. Barlow to assist them by lending collaterals.   Thereupon Aymar loaned the said firm 30 shares of the Brooklyn Factory & Power Company, and Edward M. Barlow and the defendant, his wife, loaned the said firm their bond for $3,000, secured by a mortgage on property in Brooklyn.   Kirby & Burckett executed their note to Miss Volckmer for $3,000, and deposited the bond and mortgage and certificate of stock, as collateral, with the Hamilton Trust Company, as trustee for said Volckmer.   Kirby & Burckett some time afterwards became insolvent, and their property was placed in the hands of trustees.   These trustees notified Edward M. Barlow that they would not pay interest on the note, and would not pay the principal.   Thereupon Barlow applied to Aymar to join with him in taking up the note and getting back their collaterals.   Aymar stated that he was unable to do so, whereupon Barlow took up the note and had it transferred to the defendant, the note being indorsed: "Pay to the order of Florence R. Barlow, without recourse.   Henrietta L. Volckmer."   Aymar, who was a special partner in the firm of Kirby & Burckett, assigned his claim to the said 30 shares of stock to the plaintiff, who also was a special partner in the said firm.   Aymar states in his evidence that he handed the stock as collateral to Burckett to borrow money upon said collateral, and that he intended him to use it for that purpose.   He also states that all that he knows about a request from Barlow or his attorney to take up the collateral was that he met Mr. Clinton Barlow, a brother of Edward Barlow, in the street one day, walking up from the office, No. 19 Liberty street, "and he asked me if I would not take up my portion of the note, which he said was $1,500.   I told him that I did not have the money, and could not take it up.   We parted, I think, at the corner of Liberty street and Broadway.   He went up town, and I went down.   That is the last I heard anything about the transaction."   He also stated that the value of the stock was $3,000, and that he had never paid anything to Barlow, or to the person from whom this

money was borrowed, to take up his collateral. Clinton W. Barlow was one of the trustees under the trust. He states that in the summer of 1893, when Charles Burckett, of Kirby & Burckett, addressed him upon the subject of the loan, "Burckett stated that he was in need of money for the purposes of his business,—all he could get; that the concern was right, but was short; that Mr. Aymar was willing to let him have stock worth $3,000; that he knew where he could get the money if he could add to that a bond and mortgage of equal amount, and asked if I could induce my brother to let him have it, to go in jointly. He mentioned incidentally that it was only assuming half the risk, at the worst, although he did not believe that there was any risk involved." Thereupon he delivered the bond and mortgage to Mr. Burckett. He also states that he informed Edward M. Barlow that the trustees would not pay the principal or the interest on the money. On this statement of facts, I am of the opinion that it cannot be said that Kirby & Burckett's note was paid, but that, under the special indorsement to Mrs. Barlow, it is apparent that it was the intention to keep it alive, and that, as one of the sureties for the payment of such note, the defendant is entitled to hold and sell the collaterals for the purpose of protecting herself. I think that, in equity, Aymar and the defendant, with her husband, are to be regarded as co-sureties for the payment of the principal debt, and that one of them was entitled to take up the said note and to enforce it against the principal in the same manner as Miss Volckmer could have done. Assuming, however, that the transaction amounted to a payment of the note, as Kirby & Burckett are insolvent and had refused to pay the note, I am of the opinion that either of the sureties had a right to pay the same and to hold it for his or her benefit, and was thereupon entitled to be subrogated to the rights of the payee, Miss Volckmer. A surety who has paid or satisfied the principal's debt or obligation is entitled to be subrogated to and to have the benefit of all securities which may at any time have been put into the creditor's hands by the principal debtor, or which the creditor may have obtained from the principal debtor. By the fact of payment the surety becomes an equitable assignee of all such securities, and is entitled to have them assigned and delivered up to him by the creditor, in order that he may enforce them for his own reimbursement and exoneration. If, therefore, the creditor refuses to surrender up such securities, the surety may maintain an equitable suit to compel their assignment and surrender. See 3 Pom. Eq. Jur. § 1419, p. 2189; Lewis v. Palmer, 28 N. Y. 271; Townsend v. Whitney, 75 N. Y. 425, and particularly pages 430–433. This action is brought by Kirby to compel the defendant to assign to the plaintiff the 30 shares of stock in question, and also to surrender the assignment and certificate of stock mentioned in the complaint. I do not think that the plaintiff is entitled to the relief which he seeks in this action. The plaintiff's assignor and the defendant and her husband being co-sureties, under all the circumstances of the case I think equity requires that the plaintiff's assignor should be compelled to bear his proper share of the principal debt, and that before the plaintiff can claim any relief whatever he should allege and show that he has

offered to pay one-half of the amount of the principal sum of $3,000, and of the interest which has accrued thereon. For these reasons, judgment will be rendered dismissing the complaint, with costs.

Complaint dismissed, with costs.