# SUPREME JUDICIAL COURT,

FOR THE

## MIDDLE DISTRICT.

## 1859.

## COUNTY OF KENNEBEC.

\* PARKER SHELDON, *Adm'r, versus* WILLIAM CONNER.

Whether one, having, from the owner of a tract of land, a license to cut and haul timber therefrom, can make a mortgage of it, before it is cut, that will be valid against a third party, claiming a right to the timber, acquired after it has been cut, *quære.*

The statute requiring a mortgage of personal property to be recorded, to render it valid, makes no exception; and one subsequently purchasing or attaching the property will not be affected by an unrecorded mortgage, notwithstanding he had actual notice of it.

EXCEPTIONS from the rulings of RICE, J.

This case was argued on the exceptions, in 1857, and was, by consent of the parties, submitted to all the members of the Court in 1859.

The facts bearing upon the questions of law considered by the Court, will be found in the opinion of the Court, and the dissenting opinion by RICE, J.

---

\* The papers in this case accidentally failed to reach the Reporter, until the case of *Rich* v. *Roberts, ante,* p. 548, was sent to press.

*H. W. Paine* and *Whitmore*, for the plaintiff.

*J. S. Abbott*, for the defendant.

The opinion, concurred in by a majority of the Court, was drawn up by

TENNEY, C. J. — This action is trover for the value of certain timber alleged to have been converted by the defendant. The plaintiff's title is derived from one Larry, who contracted with Heald & Co., in writing, on Nov. 24, 1849, to cut and haul the timber from a tract of land in the contract described; the said Larry to retain a lien upon the timber cut and hauled for certain charges thereon. The said Heald & Co. cut and hauled a large quantity of timber under this contract, *before* and *after* the 16th day of February, 1850. Larry gave a bill of sale of this timber to Parker Sheldon, on Oct. 10, 1850; and Parker Sheldon gave a bill of sale of the same to Parker C. Sheldon, on June 6, 1851. Parker C. Sheldon died, and his estate is now represented by the plaintiff. The logs in controversy are a part of those cut under the contract between Larry and Heald & Co., which is dated Nov. 24, 1849.

The defendant claims title from White and Norris, who took from Larry a mortgage dated April 6, 1850, but not recorded; and Heald & Co. gave a mortgage to White and Norris, without date, but recorded Feb. 16, 1850.

1. A question in the case was, whether White and Norris acquired any rights under the mortgage from Heald & Co., to logs cut subsequent to the record thereof. The Judge instructed the jury that an interest did pass under that mortgage, to that part of the logs in question.

On this question, the Court was so divided in opinion, that a majority of its members were not in favor of sustaining or overruling the exceptions, consequently, this instruction of the presiding Justice cannot be treated as erroneous; and the exceptions are not sustained thereon.

2. There was evidence tending to show that Parker Shel-

don had actual knowledge of the mortgage from Larry to White and Norris, of April 6, 1850, before the sale to him of Oct. 10, 1850. Upon this point the jury were instructed that, though White and Norris abandoned possession of the logs, or never took delivery thereof, yet the mortgage was valid as to Parker Sheldon, if they should be satisfied that he had actual knowledge of the mortgage. This, we think, was erroneous. It is true, that the law touching the recording of mortgages of personal property is, substantially the same as that which required that deeds of real estate, to be effectual, except in certain specified cases, should be recorded. And it was held that actual or implied knowledge of a subsequent purchaser, whose deed was recorded earlier than that of a former purchaser from the same grantor, should not prevent the operation of the deed first given; and this, upon the ground, that the second purchaser was guilty of a fraud upon the first. The statute upon the subject of conveyances of real estate was revised in 1840, and, in the matter referred to, an essential change was introduced, that actual knowledge only could defeat the effect of a deed given of real estate, and recorded prior to another deed of the same, from the same grantor, given anterior to the one under which he claimed.

In the R. S. of 1841, c. 125, § 32, it is provided that no mortgage of personal property, made since April 24, 1839, or that shall be hereafter made, &c., shall be valid against any others than the parties thereto, unless possession of the mortgaged property be delivered to, and retained by the mortgagee; or, unless the mortgage has been, or shall be recorded by the clerk of the town where the mortgager resides. This provision is imperative in its terms, and, if it was really designed that it should have a construction, even more enlarged than that in reference to the recording of deeds of real estate, it is very remarkable that such unequivocal language should be employed touching the record of one and not of the other.

The requirement contained in the statute referred to had its origin in this State April 24, 1839, and we are not aware

that the Court had been called upon to give, and did give a construction in the particular now under consideration, to the statute of that year, before the revised statutes of 1841 went into operation. And, inasmuch as the statutes were generally revised at that time, and that in relation to the recording of deeds of real estate underwent the alteration just mentioned, no construction of this Court has been adopted in any respect by the Legislature.

The instruction, that no title passed from Larry to Sheldon, if the transaction was fraudulent, would have been correct if the title of the fraudulent vendor is contested by an attaching creditor, or a subsequent purchaser of the vendor. If the mortgage of Larry to White and Norris was effectual in any mode, before the sale to Sheldon, it superseded the latter. If otherwise, the sale to Sheldon was the only operative transfer. As between the parties to a sale mutually designed to defraud creditors who attach, or subsequent purchasers, it is valid. *Dagget* v. *Adams*, 1 Greenl., 198, overruled by *Andrews* v. *Marshall*, 43 Maine, 272.

It is made a question, whether Larry had not abandoned his title to the logs, reserved by the contract of Nov. 24, 1849, and the Judge instructed the jury, that his taking the bill of sale of March 10, 1850, might tend to prove that fact. In this remark, no rule of law was given, but it was simply left to the jury from the evidence of that fact, which does not seem to have been objected to, to draw their own inferences. It was for them to determine, whether or not he wished to fortify his title, then existing, or whether it was from a wish to claim entirely by a different one. We think this instruction not erroneous.

The instruction given to the jury, in relation to the evidence in another trial, as compared with that in this case, was given under a misapprehension of the mode in which the former case was disposed of, and was withdrawn. The plaintiff was not aggrieved in this.                *Exceptions sustained.*

APPLETON, CUTTING, DAVIS and KENT, JJ., concurred.

RICE, MAY and GOODENOW, JJ., non-concurred.

Sheldon v. Conner.

RICE, J., dissenting.— On the 24th day of November, 1849, Abel W. Heald and others entered into a contract with J. W. Larry, by the terms of which they were authorized to cut and haul pine timber, in which the latter had an interest, either as absolute owner, or by virtue of a license, from "Spider valley" and "Arnold's river," in Lower Canada. This contract, as a specimen of obscurity and illiteracy can hardly be excelled. But by careful examination and analysis an interpretation may be had, from which the intention of the parties may, with reasonable certainty, be discerned. Among other stipulations of less distinctness, the contract contains the following provision :—" The said J. W. Larry does sell and convey and bargain the timber to the said Heald, Brown & Co., and gives them the right to go on and cut and haul timber from the above named places in the province of Lower Canada."

The title to the timber, when cut and hauled, was to remain in Larry, as security for the performance of the contract on the part of Heald & Co.

Under this contract, Heald and his associates went upon the territory described with several teams, and commenced cutting and hauling timber into the north branch of the Dead river.

White and Norris were merchants doing business at Skowhegan, and furnished Heald & Co. supplies with which to carry on their lumbering operations, under their contract with Larry, above referred to.

During the winter of 1849–50, White and Norris took from Heald and his associates, as security for supplies, past and future, an instrument or mortgage, of which the following is the material part, so far as this case is concerned :—

" Whereas White and Norris have furnished, the present winter, certain logging supplies to A. W. Heald, &c., and have agreed to furnish, during the balance of the logging season, the necessary supplies to enable the said Heald, &c. to continue their logging operations: now, therefore, be it known that the undersigned, A. W. Heald, &c., assign, transfer and

make over, as per mortgage, to them, the said White and Norris, all the logs that have been cut by us, or for us, the present winter, and landed on said north branch of Dead river, and also all logs that may hereafter be cut by us or for us, the present winter, and landed as aforesaid, to secure the full payment for all supplies heretofore furnished, or that may be hereafter furnished us by said White and Norris."

It is not controverted that the logs cut and to be cut, referred to in this mortgage, are the same logs cut under the contract from Larry.

The mortgage to White and Norris is without date, but appears to have been recorded by the town clerk of the town of Bingham, Feb. 16, 1850.

At the trial the plaintiff contended that, if the defendant would hold the logs under the mortgage from Heald and others to White and Norris, it was incumbent on him to prove that the logs in controversy were cut prior to February 16, 1850, and that no interest in the logs cut after that date passed to White and Norris, by the mortgage on that day recorded, but the Judge instructed the jury that this interest did pass by the mortgage.

It is now contended that this instruction was erroneous, inasmuch as it sustains, as a legal and binding transaction, an attempt on the part of Heald and his associates to transfer, by mortgage, property to which they had no title, and, in which they had at the time no interest, but to which they might have expected to acquire title at a future time.

It was held by this Court, in *Abbott* v. *Goodwin*, 20 Maine, 408, that if a mortgager sell goods by him mortgaged, and, with the proceeds thereof, purchase other goods, these last represent the first, and are substituted for them, and equally subject to the lien of the mortgagee thereon. Thus, it was decided, in that case, that a quantity of lime, purchased by the sale of goods which had been mortgaged, was held by the mortgagee, in place of the goods which had been mortgaged to him.

The soundness of this decision has been questioned, and

the case may be deemed to have been overruled by *Head* v. *Goodwin*, 37 Maine, 181, and *Chapin* v. *Cram*, 40 Maine, 561.

The general rule, undoubtedly is, that a person cannot grant or mortgage property of which he is not possessed, and to which he has no title. Com. Dig., Grant, D ; *Jones* v. *Richardson*, 10 Met., 481.

This principle is not, however, applicable to the case now under consideration. For, though it be true that a person may not grant that which he hath not, yet it is now well settled, that a possibility coupled with an interest, is assignable ; that a man may grant that which he hath *potentially* though not *actually*. Hill. on Sales, 12. " It is true," says WILDE, J., in *Jones* v. *Richardson*, cited above, " that a person may grant personal property of which he is potentially though not actually possessed. A man may, therefore, grant all the wool that shall grow on the sheep which he owns at the time of the grant, but not the wool which shall grow on sheep not his, but which he afterwards may buy. So a parson of a church may grant his tithes for years, although they are not actually in him at the time, yet they are potentially ; and the same exception to the general rule extends to grants of crops growing on lands of the grantors at the time of the grants." *Bigelow* v. *Wilson*, 1 Pick., 485 ; *Lunn* v. *Thornton*, 1 M., G. & Scott, 383 ; Shep. Touchstone, 239 ; Com. Dig., Grant, C.

If rights are vested, or possibilities are distinctly connected with an interest or property, they may be sold. 1 Parsons on Cont., 438.

There was, clearly, a possibility coupled with an interest in Heald and his associates. Though the timber, at the date of the mortgage, had not, all of it, been severed from the soil, the right to cut was in them, and potentially the possession was in them. The right to cut all the timber in the " Spider valley" and on "Arnold's river," had been granted by the contract of Larry, subject only to a lien to secure the payment of stumpage, &c. They had entered under this grant or license, and had cut a large quantity of the timber, at the date of the mortgage, and were proceeding day by day to

cut and haul the remainder. Their condition was not unlike that of. the parson who is actually collecting his tithes, or the husbandman whose crops are being garnered up, or the grantor of the fleece which is being taken from the sheep by the hand of the shearer, at the time of the grant. It was simply the ordinary transaction of a lumberman, who holds a permit to cut timber on the lands of another, and who, to procure the supplies necessary to enable him to carry on his lumbering operations, gives the merchant a lien on the timber, to be cut, under his permit, as security for his supplies. Though he has not, at the time the lien is created, cut a single log under his permit, yet, having the *right to cut*, by virtue of the permit, the possession of the timber is potentially in him, and he may lawfully mortgage that contingent interest, as security for his supplies. The ruling of the Court, therefore, on this part of the case, was not erroneous.

The Judge instructed the jury to ascertain whether White and Norris took delivery, and, if they did, whether they abandoned their possession; and further, though their mortgage was not recorded, and though they should be satisfied that White and Norris abandoned the possession or never took delivery, yet this mortgage would be valid as to Parker Sheldon, if they should be satisfied that he had actual knowledge of its existence when he purchased.

The question here raised is the effect of actual knowledge of the existence of an unrecorded mortgage of personal property, upon the rights of a subsequent purchaser, who purchases with such knowledge.

Section 32 of c. 125, R. S., 1841, provides that no mortgage of personal property, made since the 24th day of April, 1839, or that shall be made hereafter, when the debt thereby secured amounts to more than the sum of thirty dollars, shall be valid against any other persons than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee; or unless the mortgage has been or shall be recorded by the clerk of the town where the mortgager resides.

The Supreme Court of Massachusetts, under a statute similar in substance to the section above cited, have decided that when personal property is mortgaged, without delivery thereof to the mortgagee, and the mortgage is not recorded, a party who buys the property of the mortgager, and takes possession of it, though he has knowledge of the mortgage, will hold the property against the mortgagee. *Travis* v. *Bishop*, 13 Met., 304.

But, in New York, under a similar statute, it has been decided that knowledge in a creditor of the existence of a mortgage on personal property, which has not been duly filed, will not preclude him from availing himself of the objection. The statute makes no exception. The mortgage is absolutely void as against the creditors of the mortgager. It is different as to subsequent purchasers and mortgagees. They must, in order to be protected, take their conveyances in good faith, and that cannot be if they have actual knowledge of the existence of an antecedent mortgage, and are conscious that their conduct, if it should be available, would have the tendency to reduce the security of an innocent but careless creditor. *Farmers' Trust and Loan Co.* v. *Hendrickson*, 25 Barb. N. Y. R., 484.

At common law, as a general rule, to make a transfer of personal chattels valid against subsequent purchasers, *bona fide*, there must be a delivery, actual or symbolical, and in general, also, the possession of the goods must be retained by the vendee. *Lanfear* v. *Sumner*, 17 Mass., 110; *Goodenow* v. *Dunn*, 21 Mass., 86; 2 Kent's Com., 581. But against a person having no right, such delivery is not necessary. *Parsons* v. *Dickinson*, 11 Pick., 352.

Recording a mortgage of personal property is equivalent to, and a substitute for delivery and possession. *Bullock* v. *Williams*, 16 Pick., 33; *Smith* v. *Smith*, 24 Maine, 555.

Statutes providing for the registry of mortgages of personal property are of comparatively recent origin, and were undoubtedly adopted by the Legislature, from considerations similar to those which occasioned the registry Acts for real

estate. All registry laws are designed to give notice of the condition of the title to property, and thereby to prevent deception and fraud.

The statute now under consideration, providing for recording mortgages of personal property, is the same in substance, and, in fact, in almost the same words, as c. 36, § 1, statutes of 1821, for recording deeds and other conveyances. This statute provision may be traced back through the statutes of Massachusetts to the Colony law, c. 28, § 1; Anc. Chart., 85; and is also found in stat. 1783, c. 37, § 4.

The decisions of the courts in Massachusetts and in this State, under these statutes, have been numerous and entirely uniform, that actual notice proved is to the person affected by it, as useful, and ought to be attended with the same consequences, as public notice by registry. These decisions rest upon the ground that a party having knowledge of the existence of an unrecorded deed, is estopped to set up want of registry; and that an attempt to defeat such prior conveyance, under such circumstances, would be in violation of good conscience, and fraudulent. This principle is too well established to require the citation of authorities in its support. The obvious equity of the rule must also commend it to the approval of every honest, right thinking mind. It is equally sound in morals and in law.

Such being the rule of law in relation to real estate, deduced from great fundamental principles of equity and natural justice, independent of specific statutory provisions, and in apparent opposition to the literal reading of the statute, it is not easy to perceive on what ground a directly opposite result can be reached, under statutes of precisely the same import, and, in many instances, in the same words, where title to personal estate is involved. It is believed that no sound reason can be given for such distinction. Nor, indeed, do the authorities support it.

It seems, that a mortgage of personal property, where the mortgager retains the possession, is not valid against a subsequent *bona fide* purchaser or attaching creditor, if there be

neither record of the mortgage *nor actual knowledge of it* on the part of the purchaser or creditor. 1 Parsons on Cont., 453.

In *Smith* v. *Moore*, 11 N. H., 55, the Court say that, " to protect property against creditors, when the mortgager resides out of the State, (their registry Act for mortgages of personal property, Act of 1832, not providing for recording in such case,) the mortgagee must take and retain the possession ; *unless, perhaps, in case of actual notice.*"

In *Stowe* v. *Meserve*, 13 N. H., 46, the same question arose, and the Court say that, " although the exception to the statutory provision has long been settled, the proof necessary to bring the parties within it, seems to have been very little considered."

In *Gregory* v. *Meserve*, 20 Wend., 17, which was a claim of a second mortgagee against the first, in a case where the first mortgage was not filed according to the provisions of the statute, the Court, in their opinion, by COWEN, J., say :—" The offer to prove that the plaintiff below took his mortgage with actual notice of the defendant's prior mortgage, destroyed the character on which alone he could be protected. To say that a man takes *in good faith* when he acts with notice, and, of course, under conscious hostility to another, who has before taken a similar title, would be a legal solecism. The object of the statute here, is that of all the other registry Acts, to prevent imposition upon subsequent purchasers and mortgagees, who must, many times, govern themselves by appearances. When every thing is actually explained to them, they have the best kind of knowledge."

In *Sanger* v. *Eastwood*, 19 Wend., 514, it was held that actual notice was equivalent to recording, and, that a party having such notice, acquired no rights against a prior mortgagee. In this case, NELSON, C. J., says, in the opinion of the Court, that " clear notice of a prior claim is considered, *per se*, evidence of *mala fides.*"

The cases of *Witherell* v. *Spencer*, 3 Mich., 123, and *Hill* v. *Beebe*, 3 Kernan, sustain the same doctrine.

An argument has been deduced in favor of the position

that actual notice is of no avail under this statute, from the fact, that, when the general statutes of the State were revised, in 1841, a qualification, as to the effect of actual notice, was introduced into the statute with reference to conveyances of real estate, while that having reference to mortgages of personal property was permitted to stand as it was originally enacted. The history of legislative and judicial action upon this subject will show that no such deduction can legitimately be made. The statute in this State, providing for the recording of mortgages of personal property, is, as we have before remarked, of recent date, originating in 1839. From that time until the statutes were revised, in 1841, it was, as has been seen, substantially the same as the statute providing for the registry of conveyances of real estate, neither containing provisions declaring the effect of notice to third parties.

Under this statute with regard to real estate, while it stood thus unqualified as to notice, grew up the series of decisions to which allusion has already been made. These decisions not only held persons bound, who had *actual notice* of prior unrecorded deeds, but those who had *constructive notice* of such unrecorded deeds, and open and notorious possession of the first purchaser, under his deed, was held sufficient to raise a presumption of such notice. *McMechan* v. *Griffing*, 3 Pick., 149; *Colby* v. *Kenniston*, 4 N. H., 262; *Norcross* v. *Widgery*, 2 Mass., 506.

It has long been the settled construction of the statutes requiring the registry of conveyances, that the visible possession of an improved estate by the grantee, under his deed, is implied notice of the sale to subsequent purchasers, although his deed has not been recorded. *Mathews* v. *Demerritt*, 22 Maine, 312; *McKennie* v. *Hoskins*, 23 Maine, 230.

Such was the settled rule of law in this State when the R. S. of 1841, c. 91, § 26, with reference to actual notice of unrecorded deeds, was passed. That provision was one of limitation, not of enlargement. It restrained the subsequent purchaser, only when he had actual notice; whereas, before, the Courts had held him equally restrained by constructive notice. It charges him with fraud only when he has actual

knowledge of the prior conveyance; whereas the Courts had held him responsible as for a fraudulent act, when that knowledge was only implied from circumstances. I think the Legislative the better and more equitable rule.

As to personal property, the rule of implied or constructive notice has never been adopted. The Legislature, therefore, had no occasion to interfere, as in the case of real estate, when the statutes were revised in 1841. They may therefore well have permitted the statute to stand as it before existed, if their attention was called to the subject. But if we are to suppose that this distinction received the attention of the Legislature, the legitimate inference is that they deemed it necessary to limit the rule adopted by the Court, in relation to constructive notice of conveyances of real estate, but desired to have the old judicial rule applied to mortgages of personal property; otherwise, they would have applied the limitation in this case also, the provisions of the two statutes being in substance the same. But the ruling of the Court, in the case at bar, does not go to this extent.

The object of all registry Acts is the same; it is to give notice of the condition of the title to property, and thereby to prevent fraud and deception, and to insure honesty and fair dealing among men. Courts are, therefore, not to construe those Acts so literally as to work injustice, but so liberally as to prevent the mischief and advance the remedy. *Jackson* v. *West*, 10 Johns., 466.

The Legislature could not have intended that such an interpretation should be put upon this statute, as would enable a dishonest and designing purchaser, with full knowledge, to conspire with a corrupt or imbecile mortgager, and thus stealthily to defraud a prior *bona fide* mortgagee. Nor do I believe that the Courts will, on consideration, adopt so literal a construction of the statute, in clear violation of the general, equitable and well established rules of construction, which have obtained in analogous cases.

The defendant contended that the purchase by Sheldon was a sham, and that Larry never delivered the logs to him, and the Court instructed the jury that, if that purchase was fraud-

ulent, or the logs were not delivered under it, the title to the logs would not pass. It is contended that this instruction is erroneous. As a rule for general application, it may not be technically correct. But in determining the correctness or incorrectness of a particular instruction, reference must be had to the circumstances of the case then before the Court.

There is no intimation in the case, no suggestion from any quarter, that the mortgage from Heald and his associates to White and Norris was not made in good faith and for a valuable consideration. The objections to its validity are of a character purely technical. These objections, as we have already seen, are untenable, so far as want of interest in Heald and others was concerned, and also against a person having knowledge, on the ground that Heald's mortgage to Norris was not properly recorded.

The defendant holds under the title of White and Norris. The plaintiff claims title under a conveyance which the defendant declared to be a mere sham, and that no delivery was had under that conveyance. The contest was for precedence of right under these titles. No other question was involved, or then before the Court. We have already seen that the plaintiff should prevail against the unrecorded mortgage of White and Norris, if he had knowledge of its existence at the time of his purchase, because it would be fraud in him so to do. He is estopped from setting up, against them or their grantees, a title obtained under such circumstances. If this is sound law, then, a fortiori, is he estopped from setting up a title which, against them, is actually fraudulent,—a mere sham. Such was, in substance, the ruling of the Court. This is not a case under the statutes of Elizabeth, in which subsequent purchasers or creditors are assailing Sheldon's title as fraudulent as to them, but a case in which the question is whether he shall be permitted to set up a subsequent title, in fraud of the equitable rights of prior mortgagees in good faith, but against whose title there are supposed to exist certain technical, statutory defects.

In *Daggett* v. *Adams*, 1 Greenl., 198, this Court held that a fraudulent purchaser of goods has no right to contest the

Sheldon v. Conner.

regularity of the doings of an officer, who has seized them as the goods of the debtor, (vendor,) by virtue of an execution against him. But this case has been revised, and in the case of *Andrews* v. *Marshall*, 43 Maine, 272, it has been held that such fraudulent purchaser may maintain his right to goods thus purchased, against a naked trespasser, or person having *no* rights. Neither of these cases, however, is analogous to the case at bar.

. Those cases involved questions of fraud as to creditors, under the statute of Elizabeth, in which the effect of the fraud is pointed out by the statute. The case at bar involves a question of fraud at common law; that kind of fraud which taints and contaminates whatever it touches. There is no suggestion in the case, that the sale from Larry to Sheldon was for the purpose of delaying or defrauding the creditors of Larry. But the question was whether the circumstances of the case were such as to render it a fraud upon White and Norris, or whether there was, in the transaction, such want of *good faith* as would preclude Sheldon from setting up that title against them. It was, evidently, in view of this state of things, at the trial, that the instruction was given, and under such circumstances it was not erroneous, nor could it tend to mislead the jury, to the prejudice of the plaintiff.

·There were objections to other instructions and directions of the Court, but, on examination, those objections are not sustained. In my opinion, the exceptions should be overruled.

MAY and GOODENOW, JJ., concurred.

NOTE BY DAVIS, J.—I concur with Judge RICE, in the opinion that the right to cut timber under a permit may be sufficient to uphold a mortgage of it before it is cut.

But I am not satisfied with his reasoning on the effect of notice of an unrecorded mortgage. The considerations presented were proper for the *Legislature*. But in the face of the absolute statute provision, that no unrecorded mortgage "*shall be valid*," I cannot see how the mortgagee can have any rights under such a mortgage, against any one but the mortgager. On this point, I am constrained, though reluctantly, to concur with Chief Justice TENNEY. "The statute having made no exception, we can make none." 9 How. U. S., 522.