## GOODING *v.* JOHN RILEY & AL.

A mortgage of personal chattels without the affidavit required by law, is valid against a subsequent mortgagee having notice that the prior mortgage was made in good faith and for a full consideration.

Machinery in a mill, and so far affixed that it would pass by a deed of the real estate, may nevertheless be severed from the realty and be the subject of a valid mortgage of personal property.

Where a bill in equity to redeem a mortgage alleges a tender of the amount and brings the same into court, and also states that the mortgagee has received the rents and profits of the mortgaged property, and prays that an account may be taken of such rents and profits and of the

amount due on the mortgage debt, and that plaintiff may be permitted to redeem ; and also prays for general relief,—it was *held*, that a demurrer to the whole bill would not lie, on the ground that inconsistent modes of relief were prayed for.

The allegation of notice and knowledge in the subsequent mortgagee that the prior mortgage was made upon full consideration and in good faith, is sufficient without alleging actual fraud in such subsequent mortgagee.

Where the plaintiff denies the right of the second mortgagee to contest the prior mortgage for the want of the affidavit, and the bill alleges that the note for which such mortgage was given was without much if any consideration, and fraudulent and void, but did not state that it was wholly without consideration, the court required the bill to be amended.

In Equity. This bill, brought by Josiah Gooding against John Riley and Ezra Haskill, alleges a mortgage made by Haskill, one of the defendants, to one Lawrence, May 11, 1865, of certain machinery in a flax mill, to secure the payment of Haskill's note to him of the same date for $6,000, given for money loaned to Haskill by Lawrence, and avers that the mortgage was duly executed and recorded, and ready in court to be produced ; that on the same day said note and mortgage were duly transferred to the plaintiff for a full consideration, and in good faith, and that he now holds the same, and is the owner thereof ; that sundry payments have been made on said note, amounting in all to $2,100, and that all the rest is still due ; that this mortgage is subject to a prior mortgage by said Haskill to Samuel M. Wheeler of the land and buildings in which said machinery was placed, together with the machinery, which is alleged to have been affixed and become part of the realty so conveyed to secure Haskill's note to the Langdon bank ; that said bank afterwards brought a suit upon said mortgage and recovered judgment, February term, 1867, as of mortgage, and immediately afterwards assigned the said note, mortgage, and judgment to the defendant Riley ; that to redeem the same, plaintiff has tendered the amount to him, being $3,100, and brings the same into court ; that after the making of said note and mortgage to said Lawrence, that is, on May 13, 1865, with full knowledge of the existence of said note and mortgage, of the contents thereof, and the recording thereof, and that said note and mortgage were made in good faith and for a full consideration, the said Riley, with a view to hinder and embarrass the plaintiff in the collection of his said debt, accepted of said Haskill a note, dated May 13, 1865, for $12,000, payable to him, said Riley, with a mortgage from him, to secure the payment of that note, of the property so mortgaged before to said Lawrence, said last mentioned mortgage to said Riley being made expressly subject to said mortgage to Lawrence : and the plaintiff alleges that he has no knowledge of said note and mortgage to Riley, and claims that it is without full, if any, consideration, fraudulent, and void ; and also, that on the same 13th day of May said Haskill executed to said Riley two other real estate mortgages,

both covering the same premises before mortgaged to said Wheeler and so assigned to said Riley, and both covering the personal property mortgaged by Haskill to Lawrence as aforesaid, one of said last real estate mortgages being to secure the payment of said $12,000 note, and the other to secure the payment of said Haskill's note of the same date for $2,000, of which last mentioned note the plaintiff has no knowledge, and he charges that the same is without consideration, fraudulent, and void; which two real estate mortgages the said Riley accepted and received, with full knowledge of the existence, contents, and consideration of said note and mortgage to said Lawrence, and that the same were made, executed, and delivered, for a full consideration, in good faith, and had not been paid, and that the mortgage had been recorded; and plaintiff alleges that the three mortgages to said Riley were executed and accepted with a view and for the purpose of hindering and delaying and embarrassing the plaintiff in the collection of his said debt, and in enforcing his said mortgage; that these two notes to said Riley amount to several times more than the property so mortgaged to said Lawrence is worth; that said Haskill is a poor man and has no attachable property, and plaintiff must lose his debt unless he can obtain it out of the property so mortgaged to said Lawrence; and that for a long time the said Riley has had the income and profits of the property so mortgaged to said Lawrence, and to a large amount.

The bill prays that an account be taken of said income, and of the amount due on the Langdon bank, mortgage, and judgment, and that plaintiff may be permitted to redeem said premises and machinery embraced in his said mortgage, he being ready and willing and offering to pay what may be due for principal, interest, and cost; and that said Riley may be ordered to convey said mortgaged premises, embracing said machinery covered by the plaintiff's said mortgage, free from any incumbrances made by said Riley or any person under him, and for general relief.

The defendant Riley prays oyer of the mortgage deed from Haskill to Lawrence and enrolls it, and demurs, and assigns for causes that no affidavit was made and subscribed by the parties to the mortgage as is required by law, to be valid against the said Riley; that the property described in said mortgage was part and parcel of the real estate mortgaged to said Wheeler, and not legally conveyed to said Lawrence as personal estate; and that the bill asks for different and inconsistent modes of relief.

The defendant Haskill files a demurrer for want of equity, but without assigning any special causes.

*Small*, for plaintiff.

*Wheeler & Hobbs, Christie, and Perley*, for defendants.

BELLOWS, C. J.   One question is, whether the defendants can have oyer of the mortgage held by the plaintiff of which profert was made,

and enroll it, and thus by demurrer take advantage of a defect in its execution not apparent on the face of the bill.

If he can, it raises the question whether a subsequent mortgagee, with full knowledge of the plaintiff's mortgage that it was made upon full consideration and in good faith, can take advantage of the want of the affidavit prescribed by the statute to the truth and justice of the plaintiff's mortgage.

If in general, he could do so, whether such subsequent mortgagee would be precluded by the fact that his mortgage was made and received with the purpose of hindering and embarrassing the plaintiff in enforcing his mortgage and collecting his debt, or that such subsequent mortgage was made expressly subject to the plaintiff's mortgage.

A further question may arise upon the allegations that the plaintiff claims that the notes secured by such subsequent mortgages were without much, if any, consideration, and were fraudulent and void.

And first, as to the effect of notice:

In *Patten* v. *Moore*, 32 N. H. 383, it is laid down by BELL, J., that "the principle of equity is unquestionable, that one who buys property with notice of an existing right of a third person, legal or equitable, shall be deemed to have made his purchase in bad faith, and to be guilty of a fraud, so that he will not be permitted to set up his purchase against such right."

This doctrine is fully sustained in New Hampshire. In *Scoby* v. *Blanchard*, 3 N. H. 170, it was held that the tenant might at law set up a resulting trust in his favor against the legal title obtained by the demandant of the trustee with a full knowledge of such resulting trust, upon the ground that plaintiff's title must be considered as founded in fraud and injustice, and could receive no countenance in a court of law;—and the court, per RICHARDSON, C. J., illustrates this doctrine by putting the case of a purchase of land, with knowledge in the buyer that another had bought it before, but had forgotten to record his deed; and there the second purchaser could not hold the land because his purchase was a fraud upon the first purchaser.

In this case it was held that, as there was no court of equity in this State, a court of law would apply the doctrine of equity in a case where, as here, the claim of the demandant was tainted with fraud.

The same doctrine was applied in *Hadduck* v. *Wilmarth*, 5 N. H. 181, where the tenant held an equitable title that could have been enforced in equity, and the plaintiff, with notice of it, bought the legal title. And also in *Cutting* v. *Pike*, 21 N. H. 347.

In *Ela* v. *Pennock*, 38 N. H. 157, it is said that in each of these cases the title of the plaintiff was obtained by a legal fraud; and PERLEY, C. J., holds, that where a party purchases with notice of a prior deed not recorded, his purchase is a fraud on the party who had the equitable right under the prior deed, and he would be estopped by the fraud to set it up against the equitable title, in a suit at law. The court held, however, that where the element of fraud is wanting, the equitable title cannot be set up against the legal title in a suit at law, but resort must be had to equity for relief.

The case before us is a mortgage of personal property; and the statute then in force,—Revised Statutes, ch. 132, § 3; C. S. 128, § 5,—required that each mortgagor and mortgagee should make and subscribe the oath therein specified, which, by section 5 of that chapter, was to be appended to the mortgage and recorded with it.

Section seven provides that "no such mortgage shall be valid against any person except the mortgagor, his executors and administrators, unless possession is delivered, or the mortgage is sworn to and recorded in the manner herein prescribed."

In this case it appears that no affidavit was made, such as is prescribed; and the question is, whether the defendant Riley is precluded from setting up that defect by the notice or knowledge which he is alleged to have had when he obtained his mortgages.

In respect to real estate, it is well settled in New Hampshire that a purchaser, with knowledge of a prior conveyance that is valid between the parties, cannot, even at law, avoid it by insisting upon the want of registry or acknowledgment, or even the prescribed number of witnesses. And yet the law, Rev. St., ch. 130, § 4, is explicit, that no conveyance of real estate shall be valid against any person but the grantor and his heirs only, unless the deed be attested, acknowledged, and recorded, according to the provisions of that chapter.

The doctrine which forbids a subsequent purchaser with notice setting up such a defect to defeat a prior conveyance, stands upon the ground that such purchase is to be regarded as made in bad faith, and with the purpose to defeat a prior equitable right, and therefore, in law, fraudulent; and to allow such prior right to be defeated in that way would be using a statute made to prevent fraud as an instrument for the protection of fraud.

This doctrine originated in equity, but is now well established at law, both in this country and in England. It is a salutary doctrine, and accords with the soundest principles of morality and public policy, which must regard as bad faith and a legal fraud an attempt to aid a grantor in defeating a conveyance fairly made by him, by obtaining a subsequent conveyance of the same land, having knowledge of the prior grant.

In *LeNeve* v. *LeNeve*, 3 Atk. 646–654, the subject is fully considered by Lord HARDWICKE, and those views are fully sustained. The same may be said of the case of *Jackson* v. *Burgott*, 10 Johns. 457, where there is an able opinion by KENT, C. J.

The authorities are indeed numerous, that it is upon the ground of fraud and bad faith that a subsequent purchaser, with notice of a prior conveyance, is estopped to set up a defect of the character described. Among them are 4 Kent's Com. *456; *Dunham* v. *Dey*, 15 Johns. 568, and cases; *Connecticut* v. *Bradish*, 14 Mass. 300; *Bush* v. *Golden & al.*, 17 Conn. 594; *Colby* v. *Kenniston*, 4 N. H. 262.

So is *Hastings* v. *Cutler*, 24 N. H. 481, where there was but one witness to a deed of real estate; but it was held good against a creditor with notice, the court holding that, by the revised statute, the law of 1791 was substantially restored, under which it was held in *French*

v. *French*, 3 N. H. 234, that a deed with one witness was good under
the statute of uses.   In *Barker* v. *Bean*, 25 N. H. 412, it was held
that an assignment of real estate for the benefit of creditors was not
valid against an attaching creditor with notice, where there was only
one witness.   The court cite, and apparently rely on, *Stone* v. *Ashley*,
13 N. H. 38, which, under the statute of 1829, which was totally un-
like that of 1791, and the revised statutes, held that a conveyance
with only one witness would not be good even against the grantor.
The difference between the statutes was not adverted to in the opinion.
   The same doctrine is applied to a purchaser of the legal estate from
one person, with notice that the equitable estate is in another.   *Scoby*
v. *Blanchard*, 3 N. H. 170 ; *Hadduck* v. *Wilmarth*, 5 N. H. 181 ; *Cutting*
v. *Pike*, 21 N. H . 347 ; *Doe* v. *Doe & al.*, 37 N. H. 276 ; *Ela* v. *Pen-
nock*, 38 N. H. 154.   In these cases it was held that the equitable
estates could be set up at law against the legal estates so acquired, on
the ground of fraud only ; otherwise, without the element of fraud, re-
sort must be had to equity.   The cases, indeed, are numerous, in this
State and elsewhere, where a purchaser for value of real property has
been permitted to enforce the making of a conveyance as against a
subsequent purchaser with notice of the equity.
   The question, then, is, whether this doctrine is applicable to the
case of a mortgage of personal property, where there is no affidavit,
and no possession taken, but where the second mortgagee had notice
that the debt secured was honestly due and the mortgage was in good
faith.
   It will be perceived that the statute requisites are equally impera-
tive in the cases of mortgages of *real* and of *personal* property ; and
the provisions making the conveyances void as to all persons but the
grantor and his representatives, in case of a failure to comply with
the statute requisitions, are equally explicit in the two cases.
   Between the two cases there is this distinction :  In respect to real
estate, the object of the registry laws is to provide for notice of all
conveyances, to protect purchasers and others against secret convey-
ances ;  while, in the case of mortgages of personal property, the object
of requiring the affidavit is to guard against the making of fraudulent
of fictitious mortgages, to enable the mortgagor to retain the posses-
sion of the property and set his creditors at defiance.
   Where the object of the statute is notice simply through the regis-
try, there would be much force in the suggestion that actual personal
notice ought to be equivalent to the record ; and it has been held that
the purpose of the statute was to protect subsequent purchasers and
creditors without notice.   *Montgomery* v. *Dorion*, 6 N. H. 255.
   The verification of the truth and good faith of a mortgage of personal
property stands upon a ground somewhat different, and yet it may be
said to be designed to protect persons, who have occasion to deal with
the mortgagor respecting that property, from false and fictitious incum-
brances, and, in the absence of any change of possession, to furnish some
evidence that the mortgage was made in good faith.   To some extent
the change of possession affords such evidence, and the affidavit and

record were designed to take the place of it when possession could not conveniently be given.

Still this provision does not stand precisely like the provision for notice in the case of conveyances of real estate ; and the question is, whether it comes within the principle applied to real estate conveyances in respect to notice.

A mortgage of personal estate is good between the parties, although there is no change of possession and no verification of its justice and good faith. It is also good as against mere wrong-doers and strangers to the title of the mortgagor. In *Doe* v. *Doe & al.*, 37 N. H. 276, where it was held that the second purchase must be for value to be set up against an equity, and without notice, it creates an equity in favor of the mortgagee, of which courts will take notice and protect.

In *LeNeve* v. *LeNeve*, 3 Atk. 646, 651, Lord HARDWICKE quotes the provision of their statute : " That every such deed shall be void against any subsequent purchaser or mortgagee unless the memorial be registered," &c. ; and he remarks, " that is, it gives them the legal estate, but it does not say that such subsequent purchaser is not less open to any equity which a prior purchaser may have ; for he can be in no danger where he knows of another incumbrance, because he might have stopped his hand from proceeding."

So in *Connecticut* v. *Bradish*, 14 Mass. 300, the court held, *per* JACKSON, J., that after a conveyance of land to one, it would be fraudulent in another, with knowledge of such conveyance, to attempt to deprive the purchaser of the fruits of it; and he says, " if the grantor can be considered as having any title or estate after the first conveyance, it is merely the legal estate which he holds in trust for the first purchaser ; and the second, purchasing with knowledge of the trust, shall hold subject to the same trust ; " and this doctrine of JACKSON, J., accords substantially with the view of Lord HARDWICKE, in *LeNeve* v. *LeNeve*, above referred to.

The principle that denounces a purchase of real estate with notice of an outstanding equitable title in a third person, as *mala fides* and fraudulent, is not technical nor arbitrary, but is based upon high moral grounds, and, for aught we can see, applies with equal force to the purchase of personal property which the purchaser knows has been before mortgaged to another in good faith and for a just debt.

Is there anything in the nature of the subject, or the condition of authorities, that would suggest a different result ?

In *Patten* v. *Moore*, 32 N. H. 382, before cited, the general doctrine before quoted, as there laid down, was applied to a mortgage of standing timber as personal property ; and it was held that one who buys property with notice of an existing right of another, will be deemed to have purchased it in bad faith and fraudulently, and can only hold subject to that right. The court hold that if the purchaser had notice that there was *even a defective and voidable* mortgage, as to a *bona fide* purchaser, he was chargeable with notice of all the facts at that time existing relative to that mortgage, and at best would stand in no better position than his vendors; and the question for the jury would be,

whether the party fraudulently purchased the property knowing the plaintiff's rights, and designing by trick and cunning to defraud him of them.

In that case the mortgage was in the usual form of mortgages of personal property, and it was so treated by the court. The trees had in fact been severed in law from the land by the sale of the owner of the soil, and then subsequently mortgaged as chattels; and they were personal chattels. *Kingsley* v. *Holbrook*, 45 N. H. 313, 323, and cases cited; and so is *Cudworth* v. *Scott*, 41 N. H. 462, and cases. So in *Claflin & a.* v. *Carpenter*, 4 Met. 580, it was held that a mortgage of standing trees was a mortgage of personal property.

The case of *Patten* v. *Moore*, then, is an authority directly to the point, that a subsequent purchaser, with notice of a prior existing right in another, cannot set up the want of an affidavit to the mortgage under which the other party claims his title, the affidavit not having been signed by the parties as the statute requires.

There are other decisions in this State that have some bearing on this question, but none directly in point.

In *Belknap* v. *Wendell*, 31 N. H. 92, where a mortgage was made to secure a note given partly for a debt and partly on account of the liabilities of the mortgagee for the mortgagor, it was held that the condition should show that the note was in part given for indemnity, and the oath be varied accordingly, or the mortgage would be invalid by the express provisions of the statute. The defendant was an attaching creditor.

It will be perceived that a strict compliance with the statute provisions was held to be essential; but no question arose as to the effect of notice, and none was considered. At the very next term in Hillsborough county, *Patten* v. *Moore* was decided, and the opinion given by the same judge, Judge BELL, who of course must have had distinctly in mind the previous decision; and this lends additional weight to the opinion in *Patten* v. *Moore*.

In *Hill* v. *Gilman*, 39 N. H. 88, the mortgage was recorded without any certificate of the magistrate to the oath, and the defendant, an attaching creditor, had knowledge of this record. It was held that the statute had not been complied with, and that the mortgage was invalid against such creditor. The court, per EASTMAN, J., holds that the record was not notice of the existence of a mortgage executed and recorded according to the requirements of the statute, but of one which was, by the express provisions of law, invalid as to creditors; and that to hold it to be a good mortgage as against the defendant, who stands in the position of a *bona fide* creditor of the mortgagor, would be to evade, if not to override, a material provision of the statute.

In this case it will be perceived that the defendant had no knowledge that the mortgage was made in good faith and to secure a debt honestly due, as is alleged in the bill now before us; but only notice of a mortgage which was imperfectly executed, and invalid against creditors and subsequent purchasers. To be in point here, defendant should

have had knowledge that the mortgage was made in good faith and to secure a just debt.

In one respect this decision was in conflict with *Patten* v. *Moore.* There it was held that if defendant had notice of even a defective and voidable mortgage as to a *bona fide* purchaser, he was chargeable with notice of all the facts at that time existing, relative to the mortgage ; and in *Hastings* v. *Cutler*, 24 N. H. 481, it was held that knowledge of the record of a deed with only one witness was to be regarded as actual notice of the prior deed.

Neither of these two cases was referred to or apparently considered in *Hill* v. *Gilman.* The court, however, says, that, as to creditors, the mortgage is but the creature of the statute ; and although it may be held that actual knowledge of the existence of a mortgage may supersede the necessity of the record, yet it must be upon the ground that such knowledge is equivalent to the record, and that it would be a fraud upon the mortgagee to hold it otherwise. It is intimated, also, that upon the general question it might be held differently in equity.

Upon the whole, the court went no further than to hold that notice by the record of a mortgage imperfectly executed would not preclude an attaching creditor from avoiding it by setting up such defect, without considering at all the effect of knowledge that the mortgage was made in good faith and for a just debt.

In *Parker* v. *Morrison*, 46 N. H. 280, it is held that where the mortgage is made to secure the mortgagee against a liability, the oath must be varied so as to verify the truth and justice of that liability ; and it was also held that a mortgage under the statute could be made to secure a debt due to the mortgagee from the mortgagor only, or a liability of the mortgagee for the mortgagor : but the question of the effect of notice was not raised or considered. The doctrine of the case is in accordance with that of *Belknap* v. *Wendell*, before cited.

So far, we think the doctrine of *Patten* v. *Moore*, that knowledge that a mortgage is made in good faith and to secure a just debt will estop a subsequent purchaser from setting up the want of verification, is not shaken.

On the other hand, *Patten* v. *Moore* finds some countenance in *Smith* v. *Moore*, 11 N. H. 55, where PARKER, C. J., says the provisions of the statute respecting the mortgage of personal property bear, perhaps, so strong an analogy to the provisions of the law requiring a record of real estate conveyances, that we may be compelled to hold that notice will have the effect of a record in mortgages of personal property, wherever it would have been sufficient in conveyances of real estate : but he leaves the question undecided.

In *Low* v. *Pettengill*, 12 N. H. 339, the court recognize the effect of actual notice as applying to unrecorded mortgages of personal property.

In *Stowe* v. *Meserve*, 13 N. H. 46, it is assumed by the court, PARKER, C. J., that notice of a mortgage of chattels is equivalent to a record, as in the case of mortgages of real estate. He says a similar exception has been held to exist in relation to mortgages of

personal estate, and for the same reason. It is held, however, that notice by the debtor to the sheriff after he had got on to the ground with the writ, prepared to attach the property, was not sufficient.

It is argued in behalf of the defendants that a subsequent purchaser or creditor, with notice, may avoid a mortgage of personal property when not recorded according to the statute; and the cases cited from the Massachusetts courts tend to show that such is the doctrine there.

In *Denny* v. *Lincoln*, 13 Met. 200, SHAW, C. J., thinks there are so many and such marked differences between the rules governing the conveyance and transfer of real and personal estate, that it is not safe to rely upon the analogy between them, and he says he is inclined to hold that an attachment would be good against an unrecorded mortgage of personal estate, although the creditor had notice; but that question is expressly left undecided, and the case disposed of, on the ground that the notice was not sufficiently clear and explicit. In the opinion of the court, Judge SHAW refers to the fact that in the case of personal property there is no exception of actual notice as there is in reference to deeds of real estate; and this suggests naturally a distinction in the rule. In *Travis* v. *Bishop*, 13 Met. 304, it was held by SHAW, C. J., that there having been no delivery of the property or registration, plaintiff had not maintained his title to the goods. In the later case of *Shapleigh* v. *Wentworth*, 13 Met. 358, SHAW, C. J., considered the question of the effect of notice still undecided. In *Bingham* v. *Jordan*, 1 Allen 373, *Travis* v. *Bishop* is approved, though the question of notice did not arise.

Upon the whole, the question does not seem to have been much discussed in the Massachusetts courts; and no very weighty reasons are given for not applying the rules to personal estate mortgages, that are so well established in respect to real estate.

In Maine, a doctrine similar to that in Massachusetts was held in *Rich* v. *Roberts*, 48 Maine 548; but its weight as an authority here is much diminished by the fact that by their statute notice is made sufficient in respect to real estate expressly, but there is no such qualification as to personal estate; and the same was held in *Sheldon* v. *Conner*, 48 Me. 584, and great stress was put upon the absence of this qualification. Three of the seven judges dissented in both cases.

In the cases of *Howe* v. *Keeler*, 27 Conn. 538, and *McFadden* v. *Turner*, 3 Jones (Law) 481, cited by the defendant's counsel, the effect of notice does not appear to have been considered.

In *Hodgson* v. *Butts*, 3 Cranch 140, it was held that a mortgage of goods admitted to record on the oath of only two subscribing witnesses, when the statute of Virginia required three, was invalid against attaching creditors. The head note states that it was held invalid against such creditors with notice; and the case shows facts from which notice might be inferred. Nothing is said about notice, however, in the opinion. The statute of Virginia was held to embrace mortgages of both real and personal estate, in the terms, " all deeds of trust and mortgages whatsoever " shall be void as to creditors and subsequent

purchasers; and the question was not considered whether notice would be equivalent to the record in the case of real estate.

On the other hand, it is held in New York, where the statute makes an unregistered mortgage invalid against creditors and subsequent *bona fide* purchasers, that a person who has actual notice of an unregistered mortgage is not a *bona fide* purchaser within the statute.    *Gregory* v. *Thomas*, 20 Wend. 17.    The court there says, that " to say that a man takes in good faith when he acts with notice, and of course under conscious hostility to another who has before taken a similar title, would be a legal solecism.    The object of the statute here is that of all other registry acts, to prevent imposition upon subsequent purchasers and mortgagees    *    *.    When everything is actually explained to them they have the best kind of notice, and must be holden to take subject to prior incumbrances."

So is *Sanger* v. *Eastwood*, 19 Wend. 514, and cases cited; and *Lewis* v. *Palmer*, 28 N. Y. 277 ; *Harris* v. *Norton*, 16 Barb. 264.

These cases in Wendell were mortgages of personal property, where possession had not been taken and the mortgages had not been filed as required by the statute; but as the second purchasers had actual notice, it was held that they were not purchasers in good faith within the statute.    The same doctrine was also held in *Lewis* v. *Palmer*, 28 N. Y. 277, which was a mortgage of chattels.

A similar doctrine is held in *Hill* v. *Beebe*, 3 Kernan N. Y. 556 ; *Meech* v. *Patchin*, 4 Kernan, 14 N. Y. 71; and *Tiffany* v. *Warren*, 37 Barb. 571.

In Ohio, where the statute provisions are much like those in New York in this respect, the decisions are the same.    *Day* v. *Munson*, 14 Ohio St. (N. S.) 488 ; *Simons* v. *Pierce*, 16 Ohio St. (N. S.) 215.

From this survey of the cases, it would seem that there is no very marked preponderance of authority outside of this State directly to the point that actual notice will supersede the necessity of a record of personal property mortgages.

The weight of the decisions in Massachusetts is much diminished by the absence of discussion on that point, and the uncertainty in which it is left as to the extent of those decisions, and also by the marked difference in the Massachusetts statutes on this point in their application to real and personal property, there being an exception of actual notice in the case of a conveyance of real estate, but no such exception in respect to the sale of personal property; and this distinction is referred to by SHAW, C. J., in *Denney* v. *Lincoln*, 13 Met. 200, which is a leading case, although the point is expressly left undecided after expressing an opinion that it is not safe to rely upon the analogy between real and personal property.

The same distinction exists in the statutes of Maine; and the court there, in *Sheldon* v. *Conner*, 48 Maine 585, refer to the imperative character of the provisions in respect to personal property, and say that if it was designed that they should have a construction even more enlarged than in the case of real estate, it is very remarkable that such unequivocal language should be employed touching the record of one and not of the other.

In both Maine and Massachusetts, it would seem that in respect to real estate, actual notice of an unrecorded deed is by statute equivalent to registry, but it is not so in respect to personal property, while in New Hampshire the statute provisions on this point are the same in respect to both kinds of property ; and this greatly diminishes the weight of decisions in those States in the construction of our statutes. The decisions in Maine are also diminished in weight by the fact that three of seven judges,—RICE, MAY, and GOODENOW—dissented, RICE delivering an able dissenting opinion.

It is worthy of consideration that the statute requiring an affidavit and registration of mortgages of personal property originated long after it had become a settled and well known rule of construction that notice of the conveyance of real estate was equivalent to registration. *Tomson* v. *Ward*, 1 N. H. 11 ; *Colby* v. *Kenniston*, 4 N. H. 262. It must therefore be presumed that the statute in regard to chattel mortgages was passed with a full knowledge of this rule of construction ; and as the language, so far as this question is concerned, is substantially the same in the two cases, the inference is very strong that the same construction was contemplated. Had it been otherwise, it is inconceivble that the difference should not have been expressed.

The law requiring personal property mortgages to be registered was passed first in June, 1832, soon after the decision in *Ash* v. *Savage*, 5 N. H. 545, in November, 1831, holding that possession was not essential to the validity of a mortgage of goods, even as against creditors. The law of 1832 provided that no mortgage of personal property hereafter made shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to, and retained by, the mortgagee, or unless the mortgage be recorded in the office of the clerk of the town where the mortgagor shall reside at the time of the making the same.

The law of February 10th, 1791, in respect to the conveyance of real estate, was substantially the same, providing that without registry the deed should be good against no other person but the grantor and his heirs only ; and so was the Revised Statutes. It is obvious, then, that the statute provisions in relation to the two kinds of property are substantially the same, and they should receive the . same construction unless there are controlling circumstances leading to different results.

The English registry acts provided that conveyances of land should be deemed fraudulent and void as against subsequent purchasers and mortgagees, unless a memorial of such conveyances was registered ; but it was very soon the established doctrine in equity that such prior deed or incumbrance, though not registered, created an equitable title in the grantee, and that, as the object of these statute provisions was to protect subsequent purchasers and encumbrancers against secret conveyances, notice to them would be equivalent to registry. *LeNeve* v. *Le Neve*, 3 Atk. 646 ; and see *Dickerson* v. *Tillinghast*, 4 Paige Ch. 221.

In such cases courts of equity lend their aid to protect the holders of such equitable titles against subsequent purchasers and others, with notices of such equity, as in all other cases where there is a prior

equitable title which courts of equity would enforce. Whenever a party, who has purchased and paid for the property of another, has taken a promise to convey it, or has taken a conveyance which is good as between the parties, but not as to others for want of registration or the like, he will in equity be regarded as having the equitable title, which will prevail against a subsequent grantee having notice of it.

A purchase with knowledge of such equity is everywhere regarded as made in bad faith; and this is a doctrine of equity, of universal application, holding that a purchaser cannot in conscience hold a legal estate so acquired, there being no equity united with it.

In the case before us as made by the bill, Lawrence parted with his money, and received this mortgage in good faith; as between him and Haskill, the title, both legal and equitable, passed. As to subsequent purchasers and mortgagees, he was clothed with the equitable title, and the attempt to sell the property afterwards to another, and thus defeat the equitable title before created, would on the part of Haskill be the grossest bad faith; and if the second mortgagee had notice of the prior equity, he would be justly charged with participating in the fraud.

Indeed, there is no doctrine of equity more generally recognized than that which denounces ·such a purchase as made in bad faith; and we are wholly unable to perceive any good reason why it should not be applied in its full force in a case like the one stated in the bill; and this we think accords with the adjudged cases in our own courts.

The case of *Olmstead* v. *Niles,* 7 N. H. 522, in many of its features, resembles this. There the owner of a lot of land conveyed the pine timber upon it by a bill of sale, with the right to get it off in twenty-five years. Afterwards a creditor of the owner of the land extended his execution upon it, and set it off, subject to plaintiff's right to remove the timber. The creditor then sold the lot to the defendant without any reservation of the plaintiff's right: but the court held that this was not a case where a party had purchased without notice of a prior title; that an examination of the creditor's title would have led him to a knowledge of plaintiff's right: and also held that this timber did not pass to the creditor at all by the extent.

The second cause of demurrer is, that the property mortgaged to said Lawrence was part and parcel of the real estate mortgaged to said Wheeler and not legally conveyed to said Lawrence as personal estate.

The bill states that this mortgage to Lawrence is subject to a prior real estate mortgage by Haskill to said Wheeler describing the mill and land and the machinery in the mill, being, as is supposed, the machinery mortgaged to said Lawrence.

Assuming that the bill treats the machinery as so far affixed to the realty as to pass with it, the question is, whether it might afterwards be treated as personal property and mortgaged as such.

In the case of standing timber, which is clearly a part of the realty, it has repeatedly been held in this State that it may be severed in law, and conveyed as personal estate.

*Olmstead* v. *Niles,* 7 N. H. 522; *Patten* v. *Moore,* 32 N. H. 382; *Cudworth* v. *Scott,* 41 N. H. 462, and numerous cases cited; *Kings-*

*ley* v. *Holbrook*, 45 N. H. 313. So in Massachusetts, *Claflin* v. *Carpenter*, 4 Met. 583 ; *Douglas* v. *Shumway*, 13 Gray 498.

Nor would the fact that the timber had been previously treated as part of the realty by the same mortgagor make any difference, as we can see. It was unquestionably part of the realty before it was severed by the mortgage, as much as a house or other buildings upon the land of the owner ; and as to those, it is clear that they may be so severed.

Whether timber, or buildings, or other things which are apparently parts of the realty, can be conveyed by a personal property mortgage duly registered so as to be valid against attaching creditors or purchasers having only this constructive notice derived from the registry, is another question.

There is much force in the suggestion that, in respect to such property, subsequent purchasers and others could reasonably be required to search the registry of deeds only, for conveyances of real estate ; but however this may be, we cannot think the statute was designed to render invalid a mortgage of that kind of property, where possession of it was taken and retained by the mortgagee, or actual notice of it given, even if a record in the town clerk's office would avail nothing, as was held to be the case where the mortgagor was not an inhabitant of the State. *Smith* v. *Moore*, 11 N. H. 55.

In that case the mortgagor resided out of the State, and so a record would have availed nothing ; and yet it was distinctly assumed that the mortgage would have been good against creditors if the mortgagee had taken possession of the property.

The cases also are numerous where mortgages of growing crops as personal property have been sustained, although such crops would also pass as part of the realty. *Cudworth* v. *Scott*, 41 N. H. 456, is a case of this class ; and in *Patten* v. *Moore*, 32 N. H. 382, a mortgage of standing timber as personal property was held to be good.

These decisions, we think, must govern the present case ; and our opinion is, that a valid mortgage might be made of this machinery as personal property, under the circumstances of this case.

It is by no means clear, however, that this instrument is not effective as a conveyance of real estate. If it be so as between the parties, and the machinery is to be regarded as real estate, then an affidavit was unnecessary, and the mortgage would be good against Riley, provided he had notice of it.

The third cause of demurrer is, that the statements of the bill, and the different modes of relief prayed for, are repugnant and inconsistent with each other. The bill does state that the plaintiff has always been willing to pay off the Wheeler mortgage, and that he tendered to said Riley $3,100 in payment and satisfaction of said note, mortgage, and judgment, and cost thereon, and has always been ready and willing to pay it,—and brings the same into court for the said Riley whenever he will accept the same. The bill also alleges that the said Riley has for a long time received the rents and profits of said machinery, and prays that an account may be taken of such rents and profits, and of the

amount due on said mortgage to said Wheeler, and the plaintiff be permitted to redeem by paying the amount found due.

The object of the bill is clearly the redemption of the Wheeler mortgage by the payment of the amount due ; and it would be competent for the plaintiff to frame his bill with a double aspect, so as to avail himself of a tender if his proof was sufficient, or if he failed in that, to ask that an account be taken of the amount due, and he be permitted to pay it.

This, for aught we can see, comes within the general rule of equity pleading, that if the plaintiff doubts his title to the relief he wishes to pray, the bill should be framed with a double aspect, so that if the court should decide against him in one view of the case, it may yet afford him assistance in another. Story Eq. Pl., § 42 and § 254; 1 Dan'l Ch. Pr. 435, note 1, and cases, and 441, note 2, and cases ; *Colton* v. *Ross*, 2 Paige Ch. 396 ; *Lloyd* v. *Brewster*, 4 Paige Ch. 537.

Regularly, however, such special relief should be prayed for in the alternative. See *Colton* v. *Ross*, and *Lloyd* v. *Brewster*, before cited.

In the case before us the special relief prayed for is, that an account be taken of the income derived by Riley from the mortgaged machinery, and of the amount due upon the mortgage held by him, and that plaintiff be permitted to pay that amount and redeem the mortgage.

In respect to the amount tendered, it is not stated that it was the full amount due, and no special relief is asked in relation to it.

If it is to be assumed that, as the plaintiff has brought this $3,100 into court as the amount due upon the mortgage, and offered it to the defendant Riley, that sum must be conclusively taken to be due on the mortgage, it might be said that the plaintiff has stated no case that would sustain the special relief prayed for ; but in that case, under the prayer for general relief, the plaintiff might obtain the assistance he seeks.

In that view the demurrer would have to be overruled because it is to the whole bill, when it should have been to the special relief only.

If not regarded as conclusively fixing the amount due, then this prayer for special relief is not objectionable unless likely to surprise and embarrass the defendants ; and we do not see that it would.

The object of the bill is to determine the amount due on the Wheeler mortgage and to redeem it ; and the statements in both aspects of the case bear upon the same point, namely, the amount due ; and the objection can very conveniently be taken at the hearing, that it is conclusively admitted that this sum of $3,100 is due. In fact, courts of equity have usually been liberal in granting the relief suited to the plaintiff's case, as exhibited, notwithstanding some defect in the special prayer for relief.

In *Wilkin* v. *Wilkin*, 1 Johns. Ch. 110, where the plaintiff sought to perfect a partition already agreed to, and prayed specially that proper conveyances be decreed, it was held that under the prayer for general relief a partition might be awarded, the plaintiff having failed to prove a partition already agreed to,—Chancellor KENT holding that under the prayer for general relief the plaintiff might have other

specific relief, provided it be consistent with the case made by the bill, and that in this instance there was no objection on the ground of surprise or prejudice, for the object of the bill was partition, "though not partition entirely new."

In *Bailey* v. *Burton,* 8 Wend. 344, the court held that the plaintiff is entitled to any relief consistent with the case made in the bill, even though inconsistent with the specific relief asked for. See, also, *Western Ins. Co.* v. *Eagle F. I. Co.,* 1 Paige Ch. 284, where it is held that demurrer to special relief prayed for ought not to be encouraged, as defendant may avail himself of the objection at the hearing. See, also, Story Eq. Pl., § 40, and cases; *Hiern* v. *Mill,* 13 Ves. 114. These cases show that, under the prayer for general relief, courts of equity will grant specific relief differing very widely from the special relief prayed for, provided it accords with the case proved. We think, then, that the demurrer cannot be sustained on this ground.

Another cause of demurrer assigned at the hearing is, that the bill contains no charge of fraud or misrepresentation sufficient to maintain it, even if it should be held that a consideration is necessary to protect Riley under his mortgage.

On this point it is to be observed, that one object of the bill is to establish the plaintiff's mortgage as against the title of Riley under his subsequent mortgages; and to show that, the plaintiff alleges, in substance, that his said note and mortgage were given to said Lawrence for a full consideration for money loaned, and in good faith, and that Riley accepted and received his subsequent mortgages with the full knowledge of the existence of the plaintiff's said note and mortgage, and the contents thereof, and that the same were made in good faith and for a full consideration.

This notice and knowledge are, as we hold, equivalent to the statute affidavit and record, and alone operate to postpone Riley's " mortgages to the plaintiff" irrespective of any allegation of actual fraud. It is unnecessary, therefore, to allege actual fraud in the defendant in taking those mortgages.

The bill also alleges as another defect in said Riley's title as against the plaintiff, that in respect to the note of said Haskill to said Riley for $12,000, and the personal mortgage to secure it, the plaintiff has no knowledge, and claims that the same is without full if any consideration, fraudulent, and void; and that the plaintiff has no knowledge of the consideration of the $2,000 note of said Haskill to said Riley, and he charges that it is without consideration, fraudulent, and void. And the bill also alleges that those three mortgages were executed by said Haskill, and accepted by said Riley, with the view and for the purpose of hindering, delaying, and embarrassing the plaintiff in the collection of his said debt, and in enforcing his said mortgage.

In respect to the $2,000 note, it would seem that the charge was distinctly enough made that it was without consideration.

As to the $12,000 note, the plaintiff claims in the bill that it is without full if any consideration, fraudulent, and void. Whether this is sufficiently certain is open to great doubt, to say the least.

If these notes were given without consideration, they would not enable the holders to contest the plaintiff's mortgage on the ground that its truth and justice were not duly verified. *Patten* v. *Moore*, 32 N. H. 382; *Doe* v. *Doe*, 37 N. H. 282, and cases cited; *Esty* v. *Long*, 41 N. H. 103.

But the difficulty here as to the $12,000 note is, that the bill does not distinctly charge that it was wholly without consideration; and we think it ought to be amended in this respect.

Independent of this, however, enough is stated to enable the plaintiff to maintain his bill; and therefore, as the demurrer is to the whole bill, it must be overruled.

There are other questions that may arise, and among them the effect of the stipulation, in the personal property mortgage of the defendant Riley, that it is subject to the mortgage to said Lawrence,—whether it is to be regarded as simply a mortgage of Haskill's right of redemption notwithstanding the mortgage to Lawrence was defective as to *bona fide* purchasers, as has often been held in respect to real property mortgages, or whether Riley took it with the right to set up the defect and defeat entirely the former mortgage. See *Brewer* v. *Hyndman*, 18 N. H. 9; *Bean* v. *Brackett*, 34 N. H. 102; *Flanders* v. *Jones*, 30 N. H. 154; *True* v. *Congdon*, 44 N. H. 57, 58, relating to personal property. We, however, give no opinion on this point, but upon the other grounds.

With these views it is not necessary to settle the question of pleading that has been raised.

*Demurrer overruled.*